# CHARLESTOWN.

## WHITE *v.* CORE.

Submitted August 11, 1882—Decided September 1, 1882.

1. When a fact is proved by secondary evidence without exception or objection taken in the court below, the Appellate Court will presume all objection to such evidence waived and will not entertain such objection made for the first time in that Court. (p. 278.)

2. Every agreement required by the statute of frauds to be in writing must be certain in itself or capable of being made so by reference to something else, whereby the terms can be ascertained with reasonable certainty. And in contracts for the sale of lands the court may go outside of the writing for the purpose of identifying and ascertaining the land sold, where general words of description capable of being made certain are used in the writing. (p. 279.)

3. A deed committed to a third person to be delivered by him to the grantee upon the performance of a specified condition does not take effect, until such condition is performed, although such third person may have delivered it to the grantee. (p. 281.)

Appeal from and *supersedeas* to a decree of the circuit court of the county of Pleasants, rendered on the 17th day of March, 1881, in a cause in said court then pending, wherein Samuel White was plaintiff and W. G. H. Core and others were defendants, allowed upon the petition of said Core.

Hon. James M. Jackson, judge of the fifth judicial circuit, rendered the decree appealed from.

The facts are sufficiently stated in the opinion.

*Cracraft & Fergusson* for appellant cited the following authorities: *Jas. R. & Kan. Co.* v. *Littlejohn et al.*, 18 Gratt.; 7 Gratt. 205; 15 Gratt. 190; 12 W. Va. 98; 14 W. Va. 737; 1 Call. 117; 12 Gratt. 554.

*J. L. Richardson* for appellee cited Code ch. 125 § 36 and ch. 98 § 1.

SNYDER, JUDGE, announced the opinion of the Court:

At the April rules, 1880, the plaintiff, Samuel White, instituted his suit in the circuit court of Pleasants county against the defendants, W. G. H. Core and R. Patterson, to declare void a deed executed by him to said Core and delivered in escrow to said Patterson, and to enforce the specific execution of an agreement made between him and said Core for the division of one hundred and ninety-three acres of land and declaring the lower half thereof to be the property of the plaintiff, and for other and general relief.

The material facts contained in the record, gathered from the bill answers, exhibits and depositions, as I understand them, are as follows:

On the 17th day of March, 1874, the plaintiff purchased from the defendant, Core, a tract of one hundred and ninety-three acres of land, lying on French creek in Pleasants county, at the price of one thousand six hundred dollars, to be paid as follows: April 1, 1874, four hundred dollars; April 1, 1875, three hundred dollars; April 1, 1876, three hundred dollars; April 1, 1877, two hundred dollars; April 1, 1878, two hundred dollars, and April 1, 1879, two hundred dollars, and by deed of same date the said Core and wife conveyed said land by metes and bounds to the plaintiff, with covenants of general warranty, retaining therein a vendor's lien, to secure the payment of the several notes given for said purchase-money. At the time of said sale there was a controversy about the title to a portion of said land and an agreement, in writing, was, on the same day, entered into between said White and Core by which the said Core agreed and bound himself to pay White nine dollars per acre for such portion of said land as he might lose by action at law or chancery and indemnify him against all costs that may arise in any suit in consequence of said controversy as soon as the controversy or suits may be decided and the land or any part of it lost. White paid the first payment and took possession of the land, and at the instance of said Core brought an action of ejectment in the circuit court of Pleasants county against one John Marple to recover a part of the said one hundred and ninety-three acres of land and, also, obtained an injunction from the judge of said court, on June 13, 1874, to prevent said Marple from cutting timber and committing waste

on said land, which injunction was afterwards dissolved at the costs of said White. At the November term, 1878, of said court a non-suit was entered in said action of ejectment by the consent of Core who had employed counsel to bring said action. Sometime prior to June 1876, White paid Core on the second payment for said land two hundred dollars, and about that time a verbal agreement was made between said White and Core by which it was agreed that the said one hundred and ninety-three acres of land was to be divided by a surveyor and the said White was to reconvey the upper-half to Core and retain the lower half at the price of nine hundred dollars, and Core was to cancel the purchase notes of White so as to reduce the same, including the payments already made, to nine hundred dollars. In pursuance of this agreement a surveyor was employed and he ran said division line, and White, who then lived on the upper or Core's half of the land took possession of the lower half, did some clearing on it and built a tobacco house and a house to live in upon it. White also made an arrangement with his father, William White, to make a payment for him to Core on said lower half. Afterwards, on June 13, 1876, said William White did pay Core one hundred dollars and took from him a receipt, marked "E," in the words following:

"Received of William White for Samuel White, one hundred dollars, on land purchased of Core; and said Core agrees to divide the said land, and let the said Samuel White have the lower half of said land for nine hundred dollars, this June 13, 1876. "W. G. H. CORE."

The said Samuel White purchased but one tract of land from said Core, and that was the one hundred and ninety-three acres described in the deed aforesaid from Core to White. After the said agreement White continued to reside on Core's half of the land as the tenant of said Core and paid rent therefor. Sometime in the year, 1878, Core instituted a suit in the circuit court of Pleasants county against the plaintiff, White, to enforce the vendor's lien retained in the aforesaid deed of March 17, 1874, for the balance of the purchase-money with the interest thereon then amounting to about one thousand two hundred dollars. When the summons was served on said White he immediately went to Core and enquired of him, what the

suit meant, and Core then for the first time told White, that the agreement about the division of the land was a verbal agreement and not binding in law, and that he did not intend to carry it out, and that he had brought this suit to sell the whole of the land and buy it in for less than the balance due on the original purchase and get a decree over against White for what the land fails to bring. At that time, White did not have the money to pay for the whole of said land, nor did he know, that his father had taken from Core the receipt of June 13, 1876, marked "E," and believing, that what Core said about the invalidity of said verbal agreement was true, he accepted and, consented to an offer then and there made by said Core to the effect, that Core should dismiss said suit against him, give up all the land-notes, also another note of thirty dollars, pay all the costs in the said ejectment and injunction-suits brought by White against John Marple, and give him a valuable jack, and he would then reconvey to Core the whole of said 193 acres of land. White and wife executed to Core a deed for said land, dated November 25, 1878, which they acknowledged on the 26th day of November, 1878, before R. Patterson, a notary public, and left the same with said Patterson to hold in escrow, until Core should comply with his part of the agreement aforesaid, and until all matters between the parties were settled. Core delivered to White a store-account, which he held against White, and presented to White's wife a valuable bay mare. Core then applied to Patterson for said deed, and the said Patterson, upon being assured by Core that he had fully complied with his part of the agreement, and that the whole matter was settled between him and White, delivered said deed to Core, and on the 21st of March, 1879, without notice to White Core had it recorded in said county. At the time he obtained said deed from Patterson and had it recorded Core had not settled with White and had not complied with his part of said agreement. Subsequently, at the November term, 1879, of said court an order was entered in the said suit of *Core* v. *White,* dismissing the same by consent of parties; but Core never cancelled or surrendered the land-notes; nor did he pay the costs of the ejectment and injunction-suits, nor deliver the note for thirty dollars and the jack

to White; but Core claimed, that the surrender of the store-account and the gift of the mare to White's wife were given in lieu of said note and jack. White never authorized or consented to the delivery of the said deed by Patterson to Core, nor did he have any settlement with Core before or since said delivery. As soon as White discovered, that his father had the receipt of June 13, 1876, marked "E," which was after Core had gotten possession of said deed, he notified Core, that he would insist upon the enforcement of the agreement to divide the land, which was set forth in said receipt, and that he intended to hold the lower half of said land under said agreement. Prior to said discovery of said receipt White had paid rent to Core for the lower half of said land, but refused to pay any rent after said discovery. Upon these facts the court on the 17th day of March, 1881, entered a decree substantially as follows:

"On consideration the court is of the opinion that the defendant, W. G. H. Core, should convey with covenants of general warranty to the plaintiff, Samuel White, the lower half of said 193 acres of land, upon the payment of the nine hundred dollars to said Core, as set forth in the receipt marked "E;" and that before a decree can be made in this cause the lower half of said land should be distinctly ascertained by a survey; it is, therefore, adjudged, ordered and decreed that the surveyor of this county do go upon said land and divide the same in two equal parts and return a plat and report to this court; that said White pay the balance of the said nine hundred dollars, to-wit: The sum of two hundred dollars with interest from June 13th, 1876, till paid, together with the value of the mare given by defendant, Core, to plaintiff's wife, the money due said Core upon store account if any, and any other amount due the said Core by note or otherwise, not including the land notes executed to said Core over and above said nine hundred dollars that were agreed to be cancelled; and that defendant, Core, shall pay all costs that have accrued in the various suits both at law and equity between plaintiff, White, and John Marple touching the said land sold by Core to White; and that before a proper decree can be entered in this cause it should be referred to a commissioner of this court to ascertain the state of

accounts between the parties." The decree then refers the
cause to a commissioner to take an account between the
parties of the matters therein recited and determined. From
this decree an appeal with *supersedeas* was allowed by this
court on the petition of the defendant, Core.

The appellant in his petition has assigned four errors.
The first is that, "the court erred in enforcing the specific
execution of the pretended contract set out in the receipt to
Wm. White from petitioner, marked "E,", and filed with
complainant's bill, as the defendant, Core, denied the mak-
ing thereof in his answer, and said receipt is not produced
nor its absence accounted for."

This is the only assignment of error argued in this Court
for the appellant; and the sole question discussed is, that
said receipt "E," being a copy, is not evidence of any agree-
ment in the absence of the original without any excuse for
such absence or evidence of the loss of the original. The
facts shown by the record in relation to this receipt or agree-
ment are as follows :  The plaintiff in his bill avers, that he
made an arrangement with his father, William White, to
make a payment on said land to the defendant, Core, and
that said William White paid to the said Core one hundred
dollars in pursuance of said arrangement on the lower half of
said land, and required the said Core to set out the said
agreement in a receipt taken at the time for the said one
hundred dollars paid as aforesaid. A certified copy of said
receipt is herewith filed as Exhibit "E." Then follows a
copy of the receipt as hereinbefore given, certified by J. L.
Richardson, the counsel who filed the bill. The only refer-
ence made by Core to this paper in his answer to the bill is
this :  "Your respondent denies making the paper filed with
the complainant's bill and marked 'Exhibit E,' and that
Core & Son never sold complainant any land." Both the
bill and answer are sworn to. To this answer there was a
general and a special replication, also sworn to by the plaintiff.
The plaintiff in his deposition says, that his father told him
that he had paid Core one hundred dollars, and "my father,
also, showed me a receipt signed by W. G. H. Core showing
that he had paid one hundred dollars for me on said land.
The receipt also said I was to have the lower part of said

land for nine hundred dollars. I am acquainted with the hand-writing of W. G. H. Core, and believe after seeing said receipt that it was his hand-writing." The following is the deposition of said William White so far as it relates to said receipt. "Q. Did W. G. H. Core write a receipt and give the same to you, of which (here copy compared with original is shown witness) Exhibit 'E' filed with the papers in this cause is a copy? Answer. He did; Q. Where was this contract made between you and W. G. H. Core? Answer. In his store at Forest City." The deposition of the defendant, Core, was not taken in the cause, and the foregoing was all the evidence taken in regard to said receipt.

It will be observed, that the defendant does not deny the making of a receipt of which Exhibit "E" is a copy, but he contents himself with denying the "making of the paper filed with the complainant's bill marked Exhibit 'E,' and that Core & Son never sold complainant any land." There is no allegation in the bill that Core & Son sold the land, or that defendant signed the paper Exhibit "E." The averment is that he signed a paper of which Exhibit "E" is a copy. This equivocation may be an inadvertence or it may have been intentional, but whether the one or the other the answer is certainly not a direct denial of the execution of said receipt "E." But conceding that the answer contains such a denial as, under section 40 of chapter 125 of the Code, would put the plaintiff upon proof of the execution of said paper "E," I am clearly of opinion that its execution is sufficiently proved. But it is insisted that said copy is not evidence in the absence of the original or a sufficient excuse for its non-production. There was no exception or objection to the reading of said copy in the court below, nor was there any exception to the depositions taken to prove that such a paper had been executed by the defendant. Where a fact is proved by secondary evidence without exception or objection in the court below, the Appellate Court will presume that all objection to such evidence was waived, and objection can not be taken for the first time in the Appellate Court on the ground that the fact was not proved by the best evidence. It is unquestionably true that a fact in issue must be proved by the best evidence and that a matter which the law requires

to be shown by written evidence must be established by a writing, but as the parties may waive the production of primary evidence and accept secondary proof or a copy of a writing in lieu of the original, this Court must presume, in the absence of any exception or objection in the trial court, that primary evidence or the production of the original writing was waived. A different practice would be fraught with surprise and might work gross injustice in many cases. *Harrison* v. *Farmers' Bank*, 6 W. Va. 1.

In the case at bar exhibit "E," doubtless, was accessible and this fact known to the appellant, and for that reason no objection was made to the copy. The appellant did not testify that he did not execute such a paper, or in any manner contradict or question by proof or otherwise, except by the evasive language used in his answer, that he made the said agreement and that the paper produced was a true copy. To permit him, therefore, to surprise the plaintiff by an objection made for the first time in this Court, and that too by a matter which it was competent for him to have waived in the trial court, would operate not as a furtherance of justice but as a reward for negligence or, perhaps, a premium for sharp practice and bad faith. The law does not require the courts to sanction such a course or proceeding.

Our next enquiry is, did said paper exhibit "E" constitute such an agreement in writing for the sale of lands as satisfies the statute of frauds? It is signed by the party to be charged; it is based upon a valuable consideration and it is mutual. The only other requisite is certainty. Does it describe the land with that certainty required by the law in such cases? The price fixed is nine hundred dollars, and the property as the lower half of the land purchased by Samuel White from the defendant, Core. It is proved that said White purchased of said Core one hundred and ninety-three acres of land on French creek in Pleasants county, the same conveyed by a deed exhibited with plaintiff's bill. By reference to this deed the land is fully identified and described, and it is proved that this was the only land ever purchased by White from Core. This is sufficiently certain to describe and identify the land provided the parol testimony, which connects the land mentioned in the agreement with the land

described in the deed from Core to White, is competent. It is a well settled principle of law that the court may go outside of the writing for the purpose of ascertaining and identifying the subject matter; and a contract to sell "my farm" or "the mill" is sufficiently certain, if it appears that the vender has but one such building or tract of land. *Fish* v. *Hubbard* 21 Wend. 652; *Barry* v. *Coombe* 1 Peters 640; *Robeson* v. *Hornbaker* 2 Green ch. 60; *Warren* v. *Syme* 7 W. Va. 474, 487.

The agreement or receipt "E" refers to the land as the same that was purchased by White of Core, and the proof is that the only land purchased by White of Core is the one hundred and ninety-three acres in the deed from Core to White described and mentioned. This, we think, fully identifies the subject matter of the sale and is a sufficient compliance with the statute of frauds. Having thus shown that the contract is in its nature and circumstances unobjectionable, it is as much a matter of course for a court of equity to decree a specific performance of it as it is for a court of law to give damages for a breach of it. *Abbott* v. *L' Hommedieu*, 10 W. Va. 677. The court, therefore, did not err in declaring that said agreement "E" should be specifically executed.

The second error assigned in the petition of appellant is, "that the court improperly decreed that petitioner should pay all the costs that have accrued in the various suits at law and in equity between the plaintiff and John Marple touching the land sold by Core to White, because the written agreement between the parties provides that said Core was to pay the costs only in case the land or some part was lost, and there is no proof that any land has been lost."

This assignment has no foundation in fact, because the facts in this cause do show that the injunction obtained by White against Marple was dissolved at the costs of the plaintiff, White, and a non-suit was entered in the ejectment suit by consent of appellant, Core. So far, at least, as these suits show anything they show the loss of the land for which they were brought to recover, both having been determined adversely to the claim of the plaintiff, White. The appellant, was, therefore, by the terms of his contract with White, bound to pay all costs incurred in said suits.

The third assignment is, that "the court erred in canceling the deed of White to Core." The court did not in terms, cancel said deed as it, perhaps, should have done. It did, however, in effect hold that said deed did not abrogate the contract between Core and White by which Core was to allow White the lower half of the one hundred and ninety-three acres of land. This deed does not bind White; because it is very clear that a deed committed to a third party to be delivered by him to the grantee upon the performance of a specified condition, does not take effect until said condition is performed, although such third party may have delivered the deed to the grantee. In such a case it is simply a question of power in the agent to deliver the deed, and not a question of good faith in the grantee in accepting it, or the fact that it was delivered. The deed in this case was delivered to R. Patterson to be delivered by him to Core upon condition that certain things should be done by Core and a settlement made between White and Core. Patterson without the knowledge or consent of White delivered the deed to Core without the performance of said conditions by Core. The deed, consequently, never became operative upon White, and in contemplation of law, it is not the deed of White. If, therefore, the court had cancelled said deed the appellant could not complain.

The fourth and last assignment is, that "the court erred in not allowing said Core the interest which had accrued on the original purchase-money prior to the making of the contract for the division of the land." The plaintiff, White, in his testimony states, that said interest was released by Core and this is sustained by the terms set forth in the written receipt Exhibit "E." Core does not testify on the subject or furnish any evidence to contradict this statement. There is no error shown, then, as to the action of the court on this point.

For these reasons the said decree of March 17, 1881, is affirmed, with costs and thirty dollars damages to appellee, White, against the appellant; and this cause is remanded to the circuit court of Pleasants county for further proceedings.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED.