# CHARLESTON

## GARRETT *v.* GOFF.

Submitted June 14, 1906.     Decided January 15, 1907.

1. DEEDS—*Requisites—Delivery.*
   Delivery is an essential part of the execution of a deed. It does not take effect until there is a delivery to the grantee, either actual or constructive. (p. 231.)

2. SAME—*Questions of Fact.*
   Whether there has been a delivery of the deed is a question of fact rather than of law depending upon the intent of the grantor to vest an estate in the grantee. (p. 231.)

3. SAME—*Acceptance.*
   There can be no acceptance of a deed by a vendee without a delivery thereof by or on behalf of the vendor. (p. 231.)

4. SAME.
   A deed is incomplete and passes no title until delivery. (p. 231.)

5. SPECIFIC PERFORMANCE—*Evidence—Weight and Sufficiency*.

Where a plaintiff files his bill for specific performance of a parol contract entered into ,with the defendant for the exchange of lands and the defendant files his answer setting up the same parol contract but materially varying in terms from those claimed by the plaintiff and praying affirmative relief in the specific performance of the contract according to the terms thereof set forth in defendant's answer, and the plaintiff fails in his proofs to sustain the allegations of his bill, but the defendant establishes the contract in all its terms as set out in his answer by competent proof, clear, definite and unequivocal, the court will require specific performance thereof for the defendant. (p. 234.)

6. SAME—*Partial Performance*.

When in such case specific performance on the part of the plaintiff cannot be had in the exact terms of the contract as so established by the conveyance of his land to the defendant by reason of a deficiency in the number of acres sold by him to defendant, the defendant may elect to have performance thereof with abatement for the deficiency in the land. (p. 236.)

Appeal from Circuit Court, Roane County.

Action by W. W. Garrett against L. S. Goff. From a judgment in favor of plaintiff, defendant appeals.

*Reversed. Remanded.*

PENDLETON & BOGGESS and O. J. CHAMBERS, for appellant.

J. M. HARPER and THOS. P. RYAN, for appellee.

MCWHORTER, PRESIDENT:

This is a suit for the specific performance of a parol contract for the sale or exchange of lands between W. W. Garrett and L. S. Goff of Roane county. The contract was made on the 19th day of September, 1898. Garrett was to convey to Goff 145 1-2 acres of land in Harper District of said county and was to have in return 125 acres of land from Goff situate near the town of Spencer in Spencer District and $500.00 in money. W. W. Garrett filed his bill in the circuit court of Roane county at the March rules, 1900, alleging the contract as he claimed it to be; that he sold his said farm in Harper district supposed to contain 145 1-2 acres to the said Goff for the 125 acres and $500.00 to be paid $250.00 in October, 1898, and $250.00 in twelve months from the 19th of September, 1898, said payments to draw interest from

their date until paid; that the first of said notes had been paid but the second remained unpaid; that they delivered to each other respectively the possession of the land exchanged and had continued in possession cultivating and improving the same; that it was distinctly agreed and understood between the parties that plaintiff should convey to defendant his farm in Harper district in consideration of said 125 acres of land and the $500.00 to be paid as stated and that plaintiff should reserve a vendor's lien in his deed to secure the payment of the unpaid purchase money and that defendant should convey to plaintiff by apt and proper deed the 125 acres of land and pay the said sum of $500.00 in consideration of plaintiff's said farm; that each of said deeds was to be made and delivered as soon as practicable after said 19th day of September, 1898; that plaintiff in pursuance of said agrement had prepared and tendered defendant an apt and proper deed with covenant of general warranty conveying him said farm in accordance with their said agreement but that defendant refused to accept it, that plaintiff had repeatedly requested defendant to convey to him said 125 acres in accordance with their agreement but that defendant had failed and refused to do so; that the sale of plaintiff to defendant was a sale by the boundary in gross and not by the acre and that defendant agreed to let plaintiff have said 125 acres and pay plaintiff said $500.00 for his farm in Harper district in gross by the boundary and not by the acre, and brought into court his deed with general warranty for said land in Harper district " to be held as an escrow and delivered to said defendant when he fully complies with his part of said contract" and prayed that the contract be specifically enforced and that the defendant be required to convey said 125 acres of land to plaintiff by apt and proper deed with covenants of general warranty and that the farm sold by plaintiff to defendants be sold to pay off said unpaid purchase money.

The deed tendered with the bill to be held in escrow was dated December 3, 1899, executed and acknowledged on the 2nd day of January, 1900, and expressly reserved on its face the vendor's lien to secure the unpaid instalment of the purchase money, and after the description of the land by metes and bounds the deed contained the following: "Sup-

posed to contain 145 1-2 acres, but this is a sale in gross and not by the acre.''

The defendant filed his demurrer and answer to said bill, admitting the making of a parol contract on the 19th day of September, 1898, but denied that the contract was correctly stated and set out in the plaintiff's bill and denied that plaintiff agreed to exchange his farm in Harper district by the boundary upon any supposition that it contained 145 1-2 acres, but averred that said contract or agreement was as follows: ''The plaintiff, in said trade, represented to this defendant that he would trade him his 'home farm' in Harper district containing 110 acres and also a parcel of land adjoining the same, which he had bought of Morrison containing 35 1-2 acres for the 125 acres owned by this defendant near Spencer, West Va. and $500.00, and represented that there were more acres in said two tracts than was mentioned in the deeds, that the deeds called for 145 1-2 acres and he was sure of the fact that there was that number of acres in the boundary which he proposed to sell this defendant, that there was one or two acres more adjoining said two tracts upon which there was a fine spring, that belonged to him (Garrett) but which was not mentioned in the deeds to him (Garrett) and that this defendant could have those one or two acres also in said trade; the plaintiff represented to this defendant that he would guarantee said two tracts of land to contain 145 1-2 acres, and that it was worth $5000.00, and that was his price for it; that he would either trade the said two tracts for the said 125 acres of land and $500.00 as aforesaid or would take $5000.00 for said 145 1-2 acres;'' that defendant relying upon said representations of plaintiff and especially his unqualified statement that the land he proposed to trade defendant contained the specified number of 145 1-2 acres and relying upon said representations, guarantee and warranty of the plaintiff that there was that number of acres in his said two tracts, defendant having no knowledge whatever of the boundaries of said land or of the number of acres therein except said representations and was influenced to trade said 125 acres and to pay or agree to pay the $500.00 additional to plaintiff for said two tracts of land because of such representations and statements; and they agreed that they would make an exchange of lands as stated; and that defendant on

the 5th day of October, 1898, paid the first note of $250.00; that sometime after the agreement had been concluded between plaintiff and himself and after respondent had paid the first credit instalment of the purchase money respondent caused the land traded him by the plaintiff to be surveyed by the county surveyor and ascertained that there were but 119 3-4 acres and that there was a deficiency therein of 25 3-4 acres which at the average price paid or agreed to be paid for the entire tract purchased from the plaintiff by respondent, to-wit, $34.35 per acre would amount to $884.54, and filed with his answer a plat of said survey made by the county surveyor. Respondent denied that plaintiff tendered to him a deed for said land in accordance with the contract entered into between them; that the deed filed with the bill was not in accordance with or carried out the stipulations of said agreement; that respondent had not executed or delivered to plaintiff a deed for the said 125 acres because he ascertained said deficiency and plaintiff declined to allow respondent for said deficiency according to the average price agreed to be paid for said land and that respondent had a right to hold the legal title to said 125 acres as a security for the amount due him on account of such deficiency, therefore he executed said deed to plaintiff and tendered with his answer for the said 125 acres to be held in escrow until the matter in difference between them could be settled and adjusted and to be delivered to plaintiff when the amount due defendant should be ascertained; and averred that plaintiff did not own or have title to said one or two acres upon which he represented said valuable spring to be and the said land and spring were not in the deed which plaintiff desired defendant to accept and which was to be held with the bill in escrow, and respondent averred that said additional land and spring were very valuable to the residue of said farm and worth at least $500.00; and prayed that plaintiff be required to compensate defendant for said deficiency in said land and on account of the damage sustained by the defendant by reason of the failure of plaintiff to convey to him said spring; and that the amount of the note still held by plaintiff against defendant be deducted from the amount due him from the plaintiff and that he have a decree against plaintiff for the residue, and that plaintiff be required to surrender up

said note and that the same be cancelled; that plaintiff be required to execute and deliver to defendant a proper deed without reservation for the correct quantity of land found to be in the boundary formerly owned by plaintiff and that the balance due defendant by reason of said deficiency and damage, after the cancellation of said note, be held to be a lien upon the 125 acres and that same be sold to satisfy the amount so to be found due the defendant; and for general relief.

The plaintiff filed his amended bill to which defendant appeared on the 27th of August, 1903, and demurred thereto, which demurrer was overruled and the defendant was given thirty days in which to answer. After referring to the original bill asking that it be made a part of the amended bill, plaintiff alleged that since the filing of the original bill the defendant by some means got possession of a deed which plaintiff and Mary J. Garrett had made to defendant, dated September 19, 1898, and defendant caused the same to be recorded in the clerk's office of Roane county County Court, that thereby defendant accepted said deed, that by said deed it appeared that the tract of land to be conveyed was described by metes and bounds and as containing 145 1-2 acres more or less, that it appeared by said deed that the land was the real estate of said Mary J. Garrett, the same having been conveyed to her by deed dated 17th day of September 1895 by George W. Garrett and wife, and it further appeared from said deed that the tract of land therein mentioned was conveyed to the defendant for and in consideration of 125 acres situate in Spencer district; that said defendant and wife either on or near the 19th of September, 1898, made a deed to plaintiff conveying to him said 125 acres of land; that the same was duly executed and delivered to W. L. Starkey for plaintiff; that said defendant by some means got said deed from Starkey; that the so-called deed filed with defendant's answer dated September 19, 1898, was acknowledged before W. L. Starkey on the 10th of February, 1900, nearly two years after the contract was made, is not the deed made by defendant and his wife on the 19th of September, 1898; that this deed acknowledged by the defendant on the 10th of February, 1900, is not according to the contract made between the plaintiff and the defendant but is en-

tirely different as to the consideration from the original deed entirely different from the contract between plaintiff and defendant and therefore plaintiff declined to accept said deed; that according to the deed made by plaintiff and his wife, the said Mary J. Garrett, which the defendant accepted and had recorded, the sale of the said tract of land therein mentioned was a sale in gross and not by the acre; that at the time said last mentioned deed was made the said Mary J. Garrett was a married woman, the wife of plaintiff, and that said deed was a conveyance of her separate property and conveyed her estate therein; and prayed that defendant be required to deliver him the original deed which he made to plaintiff or that he be required to convey to plaintiff the 125 acres of land by proper deed with general warranty and that he be required to pay to plaintiff the $250.00 note mentioned in the original bill and that the payment thereof be enforced; and for general relief.

Defendant Goff filed his answer to said amended bill and averred that plaintiff got I. H. Lynch, his agent and attorney, to undertake the writing of the deed of September 19, 1898, conveying said 145 1-2 acres in accordance with the contract; that W. L. Starkey was called in to assist Lynch in the preparation of the deed; that Lynch dictated and W. L. Starkey wrote the deed; that said deed was prepared in the presence and hearing of said Garrett and in the manner agreed upon between plaintiff and defendant except the words "more or less" contained in the printed form in which the deed was written; that on the same day plaintiff caused said Starkey, as notary public, to take his acknowledgment and that of his wife, Mary J. Garrett, to said deed and delivered same to Starkey to be held by him until defendant should execute a deed for the 125 acres and deliver the same to Starkey for plaintiff; that said deed from Garrett and wife to defendant remained in the hands of Starkey until a short time before the institution of this suit, when Garrett procured the same or got the same from the possession of Starkey under the false and fraudulent pretense that he wanted to place the necessary revenue stamps on it before it should be delivered to defendant and took the deed away and failed to return the same to Starkey as agreed; that after respondent found plaintiff had gotten possession of said deed he made several

efforts to find the same and procure its return but without avail; that soon after plaintiff got the deed from Starkey, one of plaintiff's attorneys tendered to this defendant the deed filed with the plaintiff's original bill and dated December 30, 1899, but as the same was not in accordance with the contract it was not accepted and soon thereafter this suit was instituted; that there was no agreement in the contract that a vendor's lien should be retained upon the face of the deed to secure the notes and said deed filed with the bill also states on its face that the sale of the 145 1-2 acres of land by plaintiff to defendant was in gross and not by the acre, which was not according to the contract. Respondent says that after making diligent search for the deed plaintiff took from Starkey, he found that the same was in the possession of one of plaintiff's attorneys, that he called upon said attorney for the deed and got it from him with his full knowledge and consent and for fear the same might be again lost or misplaced, respondent caused the same to be recorded for safe keeping, and these being the facts respondent referred the question to the court as to whether or not he accepted the same. Respondent denied that on the 19th of September, 1898, he and his wife made a deed conveying to plaintiff said 125 acres of land and that respondent got said deed from Starkey and withholds same from plaintiff, but in fact it was understood at the time of the contract that it was necessary to survey off said 125 acres from a larger tract of land before defendant could execute said deed and some five or six months afterwards defendant got O. J. Chambers, surveyor and now one of plaintiff's attorneys in this suit, to survey said land and defendant and wife executed a deed conveying same to plaintiff according to the survey, but it was discovered that there was a mistake in one of the calls which caused the land embraced to be three acres short of 125 acres and upon plaintiff's attention being called to that he declined to accept said deed. Respondent caused said Chambers to run said line again, which was done and Chambers prepared another deed which was executed by respondent and his wife, which was left with Starkey for delivery, but it was afterwards discovered that Chambers had made a mistake in writing said deed, it being recited therein that the $500.00 boot money was payable to this defendant instead

of from this defendant to Garrett and Garrett refused to accept said deed; that afterwards respondent caused the county surveyor to run off said land and had prepared and executed the deed filed with respondent's answer and left same with Starkey; that the deed was dated 19th of September, 1898, to accord with the contract between plaintiff and respondent; and respondent denied the allegation of the bill that said deed was not according to the contract made between respondent and plaintiff, but that the same was in exact accord with the contract. Respondent averred that he did not know what became of the two deeds which were executed by himself and wife to plaintiff for said 125 acres of land and in which said mistakes occurred and which plaintiff declined to accept; denied that plaintiff was entitled to the relief prayed for in his original and amended bills and prayed for the relief prayed for in his original answer; and for general relief.

General replications were filed to the answers to the original bill and to the amended bill but no special replication was filed to either. The cause came on to be heard on the 7th day of January, 1905, upon the bill and amended bill and answers thereto and general replications to the answers and upon the depositions taken and filed in the cause, when the court was of opinion that the plaintiff was entitled to specific execution of the contract between him and the defendant set up in the original and amended bills; that the defendant was not entitled to any abatement on account of any alleged deficiency but that plaintiff was not entitled to recover anything in this suit on account of the $250.00 note, but leave was given the plaintiff to withdraw said note and proceed to collect the same in any way he might be advised proper without prejudice on account of any decision in this case; and decreed that said defendant execute and deliver to plaintiff proper deed with general warranty for the 125 acres, said deed to be on the expressed consideration of the tract of land conveyed to him by Mary J. Garrett and husband as containing 145 1-2 acres more or less which tract of land the deed from Mary J. Garrett and husband was directed and decreed to be delivered to the defendant, the same having been already taken by the said defendant from the office of G. F. Cunningham and by him placed on record in the clerk's office

of the county court of Roane county; and that the defendant was not entitled to any abatement for any deficiency in the number of acres in said tract of land; and decreed costs to plaintiff. From which decree defendant appealed.

The answer of defendant Goff set up a parol contract between the parties very different from that set up in plaintiff's bills, and prayed for affirmative relief by the specific performance thereof, which contract, as claimed by defendant, is largely sustained by the deed of September 19, 1898, made by plaintiff and his wife Mary J. Garrett to defendant for the 145 1-2 acres of land in Harper district. The discovery of the fact that said deed had been entered of record seems to have caused plaintiff to file an amended bill, alleging that it appeared from said deed that the 145 1-2 acres of land was the separate estate of the wife, the said Mary J. Garrett, and that the said deed was accepted by the defendant, and claiming that the words "more or less" following the description of the land in the deed supported plaintiff's contention that the sale was in gross and not by the acre. The said deed of September 19, 1898, was by plaintiff, after execution and acknowledgment by the grantors, placed in the hands of W. L. Starkey to be delivered to defendant when the defendant should execute and deliver to Starkey for plaintiff an apt and proper deed for the 125 acres. This was not done by defendant, but the first mentioned deed was withdrawn by plaintiff from Starkey under the pretense of placing upon it proper Internal Revenue Stamps and was not returned to Starkey but in some way came into the possession of defendant who caused the same to be recorded, as he claims and so testified, for safe keeping and not at all as an acceptance of the deed. "A deed committed to a third person to be delivered by him to the grantee upon the performance of a specified condition, does not take effect, until such condition is performed, although such third person may have delivered it to the grantee."— *White* v. *Core*, 20 W. Va. 272. And in *Gaines* v. *Keener*, 48 W. Va. 56, it is held: "To constitute a delivery of a deed, the grantor must by act or word, or both, part with all right of possession and dominion over the instrument with the intent that it shall take effect as his deed."

It is clear from the record that plaintiff never intended the deed to be delivered to the defendant until he should receive his deed from defendant, and there could be no acceptance of the deed by the defendant without a delivery. As said in section 1217, 2 Jones on Real Prop. : "Delivery is an essential part of the execution of the deed. It does not take effect until there is a delivery to the grantee, either actual or constructive." And section 1220: "Whether there has been a delivery of the deed is a question of fact rather than of law, depending upon the intent of the grantor to vest an estate in the grantee." It is not claimed by plaintiff that he intended a delivery of said deed to the defendant but on the contrary he claims that it was stolen or clandestinely taken by defendant from the office of plaintiff's attorney, G. F. Cunningham. This being so, there could be no delivery or acceptance of the deed. In *McConnell* v. *Rowland*, 48 W. Va. 276, it is laid down as the settled rule "that a deed delivered without the knowledge, consent or acquiescence of the grantor, or stolen, is no more effectual to pass title to the grantee than if it were a total forgery, although the instrument may be spread upon the record and innocent purchasers are not protected thereby." Citing 9 A. & E. E. L. (2nd Ed.) 155; *Henry* v. *Carson*, 96 Ind. 412, *Fisher* v. *Beckwith*, 30 Wis. 55. See also *John* v. *Hatfield*, 84 Ind. 75; Pom. Eq. Jur. 735, 779, 807, 821; Big. on Fraud 156; *Austin* v. *Dean*, 40 Mich. 386; *Ramsey* v. *Riley*, 13 Ohio 157; *Van Amringe* v. *Morton*, 4 Whart. 382; *Harkreader* v. *Clayton,* 31 Am. Rep. 369.

And it is further alleged in plaintiff's amended bill that the land conveyed by said deed, the 145 1-2 acres, was the separate estate of his wife, Mary J. Garrett, who was dead at the time defendant got possession of the deed. In *Lang* v. *Smith*, 37 W. Va. 725, where a deed was executed and acknowledged, ready for delivery, but was not delivered by anything there said or done, but was laid away in decedent's drawer, where he kept his papers, together with his will executed at the same time. After the grantor's death the supposed deed and will were found in his drawer. It was held that such paper writing was not his deed, never having been delivered; and further, that there could be no valid delivery after the grantor's death. In *Skipwith* v. *Cunningham*, 8

Leigh 271-281, Judge Tucker, speaking for the court says: "Delivery is indeed absolutely necessary to a deed. It is the final act, the formal declaration of the grantor's determination to complete the conveyance, or enter into the contract. See *Sharrington* v. *Shotton Plowd*, 308. First there is a determination of the mind when a man designs to pass a thing by deed, and upon that the party causes it to be written, which is one of deliberation; sealing is another, and delivery is the consummation of his resolution." See 2 Min. Inst. 732; 2 Lomax Dig. 26, 27; 4 Kent. Comm. 454; 2 Coke Litt. 234, 235; *Church* v. *Gilman*, 15 Wend. 656; *Jones* v. *Jones*, 6 Conn. 111 (16 Am. Dec. 39, and note); *Doe* v. *Knight*, 5 Barn. & C. 671.

It is contended by counsel for appellee that defendant by taking possession of the deed and placing the same on record is estopped from denying his acceptance of it, that when he took it he said "it was no harm to put what belonged to him in his own pocket," but there was no delivery of the deed and it passed no title to him as we have seen, but was of much value to him as evidence in the contention which had arisen between the parties as to what the contract was. It is contended by counsel for appellee that the proposition was made by Goff through his agent, I. H. Lynch, who states that "I just simply stated to Mr. Garrett that Mr. Goff would give him 125 acres of land for his land in Harper District and give him five hundred dollars to boot" and that Mr. Garrett said he would accept Mr. Goff's propostion; this was prior to the meeting of the parties in Lynch's office to execute the deed. It was at said meeting when Goff asked Garrett how much land was in his two tracts and he said there were 145 1-2 acres; and as stated by Lynch in his testimony, Garrett represented the number of acres in the two tracts to be 145 1-2. "He said he believed there were more acres than were mentioned in the deed, but that he was assured there was fully one hundred and forty-five acres. He said to Mr. Goff in the presence of W. L. Starkey and myself that he would either take five thousand dollars for the farm, or that he would take the said one hundred and twenty-five acres of land and five hundred dollars to boot. Mr. Garrett also stated that there was one or two acres more with a spring upon it that belonged to him that was not mentioned

in the deed and Goff could have that also.'' Lynch is fully corroborated by W. L. Starkey who says that ''after we commenced writing the deed Mr. Goff spoke something about whether or not there was actually 145 acres of land in that tract he was getting from Garrett and Mr. Garrett said he would insure the 145 1-2 acres, that there were actually two acres about more than the 145 1-2 but the papers did not cover the amount but he had it under control for some length of time, I do not remember how long, and on the small piece there was a good spring that was valuable to that part of the land and he would get that also in with the 145 1-2 acres.'' He further testified that Garrett's land was then valued at $5000.00 and Goff's at $4500.00. Goff also testified that Garrett assured him there were 145 1-2 acres in the tract, and the small tract of one or two acres with the spring which he was to get with the 145 1-2 acres. While Mr. Garrett testified to the contrary, or that he does not remember such conversations as to the number of acres in his tracts, the overwhelming preponderance of evidence is that Garrett represented to Goff that the two tracts contained together 145 1-2 acres at least, besides the small piece with the spring which should go with it.

Counsel for appellee represent that Lynch was the agent of and acting for Goff in the transaction. Mr. Garrett, in his testimony, says, ''I told Mr. Lynch before I ever saw Mr. Goff or heard of him, I wished he would find me a buyer for my farm and he asked me what I priced it at and I told him that if in the oil excitement if he would sell it for $5000.00 I would give him $50.00.'' When asked on cross-examination, ''Did you pay Mr. Lynch the $50.00 for selling your land? A. I gave Mr. Lynch $50.00.'' Goff testified that he did not employ Lynch to make the trade for him and never paid or agreed to pay him anything for services in the matter. Lynch testified that Garrett agreed to compensate him for his services in making the trade, and paid him $50.00 therefor. It would appear that if Mr. Lynch was the agent of anyone in the transaction, he was the agent of Garrett.

The plaintiff has set up a parol contract for the sale and exchange of the lands in question which he has been unable to establish by proof. In *McCully* v. *McLean*, 48 W. Va.

625, the syllabus of the case is as follows: "In order that a parol contract for the sale of real estate should be specifically enforced, the contract must be established by competent proof to be clear, definite, and unequivocal in all its terms, and the contract proved must be that charged in the bill." The burden of establishing such a contract rests upon the plaintiff who alleges its existence. A court of equity will not enforce a parol contract for the sale or exchange of land, unless the terms of the agreement are admitted or clearly proven." And in *Gillaspie* v. *James, Id.* 284, it is held: "To enable a court to enforce a specific contract for the sale of real estate the contract must be established by competent proof to be clear, definite, and unequivocal in all its terms. And the contract proved must be that charged in the bill." But the defendant Goff filed his answer setting up his version of the same contract different somewhat in its terms from that as set out in the plaintiff's bill and which by way of affirmative relief defendant prayed might be specifically enforced. No special replication was filed to this answer. Section 36, chapter 125 of the Code, section 3856 Anno. Code 1906, provides that: "Every material allegation of the bill not controverted by an answer, and every material allegation of new matter in the answer constituting a claim for affirmative relief, not controverted by a special reply in writing, shall for the purposes of the suit, be taken as true, and no proof thereof shall be required." In *Kanawha Lodge* v. *Swann,* 37 W. Va. 176, Syl. pt. 1, it is held: "Under sections 35 and 36 of chapter 125 of our code, an answer calling for affirmative relief has the same effect as a cross bill." And in *State* v. *County Court,* 47 W. Va. 672, syl. pt. 4, it is held: "Any pleading setting up new matter good in law is taken for true if not answered." While we think under the decisions the answer of the defendant asking for affirmative relief in the specific performance of the contract as set out by him in his answer should be taken as true (there being no special replication filed thereto), and the defendant would be entitled to the relief prayed for, the testimony in the case clearly establishes the truth of the allegations of his answer. Specific performance on the part of the plaintiff cannot be had in exact terms by the conveyance to Goff of the 145 1-2 acres, because of the deficiency there-

in, yet the said Goff elects to have performance thereof with abatement for the deficiency of the land. There is clearly shown to be a deficiency of 25 3-4 acres. In *Kelley* v. *Riley*, 22 W. Va. 247, syl. pt. 3, it is held: "Where a person has made a sale of land in gross, at a specified price, upon an unqualfied statement that it contains a definite quantity or specified number of acres, it will be held *prima facie* that the vendee was influenced to pay or agree to pay the price specified because of such statement; and if it is afterwards established that there is a deficiency in the quantity in excess of what may be rightfully attributed to the usual inaccuracies in surveying, the vendor, in the absence of all other proof, will be presumed to have committed a fraud on the rights of the vendee by such statement of the quantity, and a court of equity will for this reason grant relief to the vendee for such deficiency." *Anderson* v. *Snyder*, 21 W. Va. 632; *Atkinson* v. *Beckett*. 34 *Id.* 584; Hogg's Eq. Pr. section 7; *Depue* v. *Sergent*, 21 W. Va. 326; *Crislip* v. *Cain*, 19 *Id.* 438, syl. pt. 15; *Prichard* v. *Evans*, 31 *Id.* 137; *Sine* v. *Fox*, 33 *Id.* 521; *Boggs* v. *Harper*, 45 *Id.* 554; *Newberger* v. *Wells*, 51 *Id.* 624; *Nelson* v. *Mathews*, 2 H. & M. 164; *Duvals* v. *Ross*, 2 Munf. 290; *Anthony* v. *Oldacre*, 4 Call. 489; *Boschen* v. *Jurgens*, 92 Va. 756.

It is shown in the proofs by one of plaintiff's deeds that the tract he represented as containing 110 acres really contains but 99 acres. The deed from Henderson Harper and wife to Andrew Carpenter in plaintiff's chain of title, and a copy of which is filed with the deposition of J. L. Harper in this cause, describes the tract by metes and bounds and "containing one hundred acres, more or less, or the above described boundary, but the said party of the first part reserves one acre beginning at the Sugar Corner running towards Samuel Gandee's so as to take in a spring and thence towards the beginning." In *Nelson* v. *Mathews*, *supra*, it is held: "A vendor who conveys a tract of land, with general warranty, as containing by estimation a specified quantity, more or less, when in fact his own title papers call for less than such specified quantity is bound to make good the difference to the purchaser." Hogg's Eq. Prin. section 7; Hilliard on Vendors, page 328, chapter 21. When the trade was made Goff had never seen the land but once,

had then simply passed through it on the road, and it is shown that he inquired particularly of plaintiff at the time they were negotiating about the quantity contained in the two tracts and was assured by plaintiff that there were at least 145 1-2 acres of it besides the small piece he was to have with it including the spring. The defendant has clearly shown himself entitled to a conveyance from plaintiff of general warranty for the 119 3-4 acres shown to be the actual quantity contained in the two tracts sold to him by plaintiff as containing 145 1-2 acres and to an abatement for the deficiency of 25 .3-4 acres as well as to receive a deed from the plaintiff for such title as he may have to the small piece including the spring, which last deed will be without warranty as plaintiff made no representation or claim that he had any paper title thereto.

The evidence is conflicting as to the value of the 145 1-2 acres and the 125 acres respectively, or as to whether the parties agreed as to the value thereof in their negotiations, so that this Court cannot say what amount per acre or in gross should be allowed the defendant as abatement for the 25 3-4 acres. This amount will have to be ascertained and adjudicated by the circuit court.

For the reasons herein stated the decree of January 7, 1905, entered in this cause by the circuit court of Roane county is reversed, set aside and annulled and the cause remanded to said court with directions to enter a decree requiring the plaintiff to execute and deliver to the defendant an apt and proper deed with general warranty for the actual and correct quantity of the two tracts of land in Harper district known as 145 1-2 acres but really containing only 119 3-4 acres, and including in such deed the small lot including the spring, but with special warranty as to such small lot, and that the court ascertain the proper amount of the abatement to be allowed to the defendant for the deficiency of 25 3-4 acres and that the unpaid note of the defendant still outstanding for $250.00 be deducted from said amount and judgment given for the defendant for the residue if any of said amount so ascertained by the court to be due him on account of such abatement; that the defendant be required to make and deliver an apt and proper deed to the plaintiff with general warranty for the tract of 125 acres agreed by him

to be conveyed to the plaintiff reserving a lien on said 125 acres to secure the payment of the judgment provided to be given in favor of the defendant for said abatement; and for all other such proceedings as may be proper and necessary in the final adjustment of the matters between the parties.

*Reversed. Remanded.*