# CHARLESTON.

CROOKSHANKS *et als.* v. RANSBARGER *et als.*

Submitted March 6, 1917.    Decided March 20, 1917.

1. VENDOR AND PURCHASER—*Contracts—Description.*

   A contract of sale of land, describing the subject matter as the tract of land on which the vendors reside, either in express terms or by necessary implication arising from words used in it, is not void for indefiniteness of description.  (p. 22).

2. SAME.

   If, however, the vendors own two non-contiguous tracts and reside on only one of them, such description extends to and includes only the one on which they reside.  (p. 23).

3. SAME—*Contracts—Duress.*

   Threats of a civil suit to enforce a claim arising out of a contract for the sale of land, under the influence of which a new contract is made, do not constitute duress vitiating the latter or affording ground for descission thereof.  (p. 25).

4. SAME—*Contracts—Fraud.*

   A new contract of sale of land at a price higher than that named in an older one, though lower than that offered by a third person, signed, acknowledged and delivered, upon demand and under threats to sue for enforcement of a claim of liability arising out of the latter and. false representations as to the character of the holder and as to his having already instituted such suit, but with-out any misrepresentation as to the character of the contract, its terms or provisions, or as to liability thereon, is not fraudulent.  (p. 25).

5. SAME—*Contracts—Undue Influence.*

   Though, in such case, the vendor, a husband, is not, at the time of the execution of the new contract, in his usual mental and physical vigor, the yielding of his wife, upon demand for her signature and acknowledgment, and the acquiescence of a third party desiring the property at a higher price, in the execution thereof, though with intent to endeavor to set it aside, as an as-signee, in the names of the vendors, and so obtain it at such higher price, repel such inference of undue influence as might arise from the slight weakness shown and prove the contract to have been entered into by way of compromise of the claim of liability on the previous one.  (p. 26).

6. DOWER—*Specific Performance—Release of Dower—Conveyance by Husband and Wife.*

   The inchoate right of dower of a married woman is not released,

relinquished nor barred by an executory contract of sale of the real estate of her husband, signed, sealed and acknowledged by her and her husband, in the manner prescribed by sec. 4, ch. 73 of the Code, and delivered to the vendee; nor will a court of equity compel her, by a decree of specific performance, to join in the execution of a deed conveying the land to the vendee.  (p. 29).

7.  APPEAL AND ERROR—*Reversal—Effect.*

   On reversing a decree improperly canceling such a contract, upon allegations of fraud in the procurement thereof, affirming the validity and binding force of the contract as to the husband, but denying right to specific performance thereof as to the wife, upon a prayer therefor in a cross-bill, the appellate court will remand the cause to enable the vendee, upon an amended cross-bill, to assert, if he desires to do so, such right, if any, as he may have against the husband's heirs, (he being dead), and as may be enforceable in the pending suit.  (p. 33).

Appeal from Circuit Court, Fayette County.

Suit by Elizabeth F. Crookshanks and others against Homer Ransbarger and others.  From a judgment for plaintiffs, defendants appeal.

*Reversed and remanded.*

*Davis, Davis & Hall* and *R. T. Hubbard, Jr.,* for appellants.

*W. R. Bennett, A. J. Ryan* and *Ryan & Boggess,* for appellees.

POFFENBARGER, JUDGE:

The general issue raised by the pleadings in this cause is whether or not a certain contract for the sale of real estate is valid.  The original and amended and supplemental bills attacked it upon two grounds, fraud in the procurement thereof and fatal uncertainty in the description of the subject matter.  In response to these attacks and the prayer for cancellation, the defendants filed their answer and cross-bill praying specific performance.  The decree appealed from granted the relief prayed for in the bill, upon the theory of fraud in the procurement of the contract, and dismissed the cross-bill.

If unaided by anything else in the paper, the descriptive clause might be so indefinite as to render the contract void for

uncertainty. It says the land agreed to be sold is ''All of the real estate lying North of Laurel Creek, including that portion of the land lying on Laurel Creek near Withrow's Mill, and also all of the land lying East and West of Meadow River, at Rader's Ford, said land lying in Fayette and Greenbrier Counties.'' But it is followed by another clause saying: ''The parties of the second part reserves the right to remain on the·land in their present home and have the use of all the cleared land on both sides of the river and access for wood and coal for fuel until the 11th. day of August, 1906, free of any charge and also the refusal to rent said home as long as it is for rent, by the parties of the first part, or his assignees.'' As it is permissible to read the entire contract, upon the inquiry for the intention of the parties, the two clauses may be read together, and, so read, they describe the land as the farm or tract of land on which the vendors resided. A deed or contract describing land generally, as being the tract on which the vendors reside, or as the home tract or farm, or as all the land they own in a certain county, is amply sufficient as regards descriptive matter. *Furbee* v. *Furbee*, 49 W. Va. 191; *White* v. *Core*, 20 W. Va. 272; *Munday* v. *Vawter*, 3 Gratt. 518.

The application of this rule does not, however, completely solve the problem presented. The land claimed under the contract was not all in one boundary. The portion described as being ''All of the land lying East and West of Meadow River, at Rader's Ford'' was the tract on which the vendors resided. ''That portion lying on Laurel Creek near Withrow's Mill'' is separated from the tract on which they resided, by another tract of 150 acres, which they seem to have sold out of their farm. It is composed of two tracts, one derived from Ashley, containing 16.7 acres and the other from McClung and containing 26.3 acres, a remnant of a 400 acre tract out of which the 150 acre tract was sold, leaving a large remnant at one end and a small one at the other. On the large one, they resided, wherefore the contract covers it; but it is not broad enough in its terms to reach the noncontiguous tract of 43 acres, composed of these two small tracts. It does not purport to sell all of the lands of the

vendors. Though it says "All of the real estate lying North of Laurel Creek, including that portion of the land lying on Laurel Creek near Withrow's Mill," it does not say whose land that is, which lies on Laurel Creek near Withrow's Mill and the vendors did not reside on that tract. It was not a part of the tract on which they resided. Between it and the tract on which they resided, there lay another 150 acre tract belonging to the Gauley Coal Land Co. The words of the contract, therefore, fall short of any description of this small tract. Though it may be said, the parties intended to sell all the land they had, the contract does not say so by any words used in it, and it is absolutely essential that some words importing intent to cover the land be found therein. Words in the contract, not mere circumstances outside of it, nor the relation of the parties to the land, form an indispensable element. *Oil Co.* v. *McCormick,* 68 W. Va. 604; *Crawford* v. *Workman,* 64 W. Va. 10. No doubt the parties intended to contract the sale of these small tracts. If mere inference arising from their situation, their relation to them, the obvious intent and purpose of the vendee, and all the other facts and circumstances disclosed by the extrinsic evidence could supply want of language in the contract, it could be said the intent to sell these tracts is clear. But the law rigidly exacts the presence of words in the contract, expressing the intention. It cannot be supplied by mere inference arising from facts disclosed by extrinsic evidence and the relation of the parties to the instrument. "Operative words manifesting intent to transfer the property are absolutely essential to the conveyance of title. The intent must be disclosed in the words of the deed, not the mere acts of the parties." *Freudenberger Oil Co.* v. *Simmons,* 75 W. Va. 337. It is hardly necessary to say a contract for a conveyance must be equally broad in its scope, for specific performance thereof results in a deed and a court, decreeing specific performance, would not be justified in going beyond the terms of the contract.

A letter signed by A. F. Crookshanks and dated September 6, 1905, less than one month after the date of the contract, describes these two small tracts as being land covered by, and

included in, the contract. That this letter may be read in aid of it and as constituting a part thereof, is perfectly manifest. *Johnson* v. *Ronald's Adm'r.,* 4 Munf. 78; *McCandless* v. *Warner,* 26 W. Va. 754; *Moore* v. *Ward,* 71 W. Va. 393; *Parrill* v. *McKinley,* 9 Gratt. 1; *Bowles* v. *Woodson,* 6 Gratt. 78. In as much as the letter is a sufficient memorandum, it is unnecessary to say whether the bill and *lis pendens* notice filed by the plaintiffs and admitting the two small tracts were parts of the land intended to be sold, constitute memoranda of sale, sufficient under the statute of frauds.

Pending the suit brought by the husband and wife, the former died and it was revived in the names of his administrator and heirs. For the most part, the testimony relied upon to sustain the allegations of the bill and amended and supplemental bill, was that of the widow and the children. This was objected to on the ground of incompetency on their part, because of their interest in the result of the suit. It is unnecessary to enter upon any inquiry as to their competency, for their testimony, if admitted, would be insufficient to make out a case of fraudulent procurement. They may be competent witnesses as to some of the matters to which they testified but not as to others. Some of the transactions referred to by them may have been personal communications and others not. On the other hand, they may be fully competent. In view of the insufficiency of all of their testimony, if admitted, it would be a waste of time and labor to apply the test of competency to all of the various matters referred to by them. *Telluric Co.* v. *Bramer,* 76 W. Va. 185.

The representations relied upon to establish fraud did not pertain to the value or character of the land. Their tendency was to prove intimidation or coercion, something in the nature of duress, a special form of fraud, rather than deceit or ordinary fraud. About four years prior to the date of the contract, the plaintiffs had executed to D. C. T. Davis a contract of sale of the same land or an option to purchase it, at the price of $11.00 an acre. Just what it was, the record fails to show, but its existence and the price named are admitted. Homer Ransbarger procured the second contract at $15.00 per acre in his own name, but for Davis, and the latter was

agent for D. A. Langhorne. When Ransbarger applied for it, the existence of the old contract still held by Davis, was discussed and the vendors refused to enter into a new one without a surrender of it. On August 8, 1905, the husband signed an agreement to enter into a contract of sale at $15.00 per acre, on the surrender of the former one. As to whether the wife signed it, there is contradiction. Three days later, Ransbarger returned with the old contract and the new one prepared for signatures. The former was surrendered and the latter signed and acknowledged by both husband and wife. Ransbarger admits unwillingness of the vendors to enter into the new contract, without surrender of the old one, their objection to consummation of the second agreement, when he returned with the Davis contract, and his representation that Davis had said he would sue them on it, if they did not execute the new one. He says they asked him if he thought Davis would do that and that he replied in the affirmative and related an incident indicative of Davis' disposition to contend for his rights. The testimony of the witnesses for the plaintiffs goes beyond this. They say Ransbarger coerced the husband into signing the preliminary agreement of August 8, by threats as to what Davis would do and false representations as to his character and what he had already done. He was described, they say, as the meanest man in Greenbrier County and as one who had already broken up a liveryman and a justice of the peace in litigation, and represented as having already brought suit on the old contract in the "high court." To this was added a threat that he would break the vendors up in litigation, if they refused to sign the new contract. They say A. F. Crookshanks, the husband, had sustained injuries from a fall from a mowing machine, a few days before he was approached by Ransbarger, and was mentally and physically weak and wholly unfit for the transaction of business, and that the representations made by the latter put him and his wife in great fear and distress, and so caused them to enter into the contract against their will. They say one Moore assisted Ransbarger in thus overcoming them, by his gratuitous and hostilely inspired advice to them to enter into the contract. On August 8, the date of Ransbarger's

first visit, A. R. Dickerson, agent for Mrs. Julia A. Beury, was endeavoring to obtain the same land at $20.00 per acre, but he seems to have been afraid of the old contract.. Some of the evidence tends to prove he took a conditional verbal contract for the land, at that price, on or near that day, and a written one later. Ransbarger is further represented as having been dictatorial on the occasion of his second visit, and as having ordered the vendors to sign up and get out.

Although there was some contradicted and rather unsatisfactory evidence of mental weakness on the part of the husband, but not on the part of the wife, the acts complained of are not of the character of those recognized in law as being sufficient to establish duress *per minas*. There was no threat of a criminal prosecution, personal injury, imprisonment, seizure or detention of goods or injury or destruction of property. The common law rule respecting the nature of the acts capable of producing such fear as will avoid a contract and the standard of resistance, dependent upon the character of the person wrought upon, has undergone a very considerable change, but no authority asserts the sufficiency of a mere threat to bring a civil action to enforce an alleged liability on a contract. On the contrary, the courts almost uniformly say such a threat is not sufficient. Cooley on Torts, p. 968; 9 R. C. L., p. 722, title Duress, sec. 11; *Geler* v. *Wohletz,* 79 Kan. 716; *McClair* v. *Wilson,* 18 Colo. 82; *Hilborn* v. *Buckman,* 78 Me. 482; *Parker* v. *Lancaster,* 84 Me. 512; *Krider* v. *Fanning,* 74 Ill. App. 230; *Dunham* v. *Griswold,* 100 N. Y. 224; *Bank* v. *Logan,* 99 Ga. 291; *Shelby* v. *Brownman,* 64 Kan. 879; *Cohen* v. *Troy Mfg. Co.,* 99 Ga. 289. Though a difference between men as regards their powers of resistance, dependent upon the presence or lack of ordinary intelligence and courage, is recognized, and due allowance made for deficiencies, the acts relied upon as having influenced the complainant to contract against his will must come up to the legal standard. That is a matter of law not dependent upon the facts of the particular case. Lack of ground, reason or cause for the threatened suit is not disclosed. For all that appears in the record, there may have been absolutely good cause of action on the contract.

If misrepresentations as to the terms or provisions of the old contract, its character or probable liability thereon, would constitute ordinary fraud and so afford ground of relief, there is no evidence of anything of the kind. There is no pretense of ignorance of its terms or character on the part of the plaintiffs. Presumptively, it had been fairly obtained and voluntarily and deliberately executed. They have not produced it, nor do they claim it was not binding upon them. On the contrary, they, as well as Dickerson, seem to have regarded it as one giving rise to at least a debatable question of liability. The husband may not have possessed, at the time, his previous mental and physical vigor, but the testimony relied upon as proof of that, shows he was alert to the significance of the outstanding contract and wisely insisted upon its surrender. Though the wife claims to have been uneducated, there is no pretence that her mind was impaired. She yielded, as did Dickerson who wanted the land for Mrs. Beury. The latter appears to have been a shrewd and competent business man. He saw the vendors and negotiated with them, on the day of Ransbarger's demand upon them, but they did not put him on the stand to say they disclosed any appearance of mental distress, such as members of the family describe. At the instance of the defendants, he testified that he saw nothing of the kind, and, further, that he saw nothing unusual in the appearance or conduct of the husband. Both husband and wife were under 60 years old, and the former was or had been, a notary public, had prepared deeds, taken acknowledgments, and, earlier in life, had taught school. The mental distress, if any, was clearly the result of disappointment over the loss of a better bargain, and not of imbecility or fear, or both.

Our conclusion is that the new contract was a compromise contract and that the evidence, if admissible, is clearly insufficient to prove either duress or fraud on the part of the defendants.

Laches, as matter of defense, is wholly unsustained by anything in the record. Plaintiffs attacked the contract in April, 1906. In September, 1906, Ransbarger and Langhorne appeared. The latter attempted to remove the suit into the

federal court. In September, 1910, he filed his answer praying affirmative relief. There has been no such delay as bars his right. Nor is there any evidence of intention to abandon his claim.

Both denial of the relief sought by the plaintiffs and right in the defendants, by virtue of the contract, are inevitable results of the conclusions stated; but the extent of the right of the vendees is a remaining subject of inquiry. Though the wife signed, sealed and acknowledged the contract for conveyance of all the land mentioned and described in the proceedings, except that near Withrow's Mill, her aversion to performance by joinder in a deed of conveyance is emphatically disclosed by her attitude in this suit, as well as by correspondence antedating institution thereof. Now that the validity and binding force of the contract as regards her husband are judicially declared, she may or may not be willing to release her dower, wherefore it becomes necessary to say whether a court of equity can compel her to do so.

That she cannot be required to execute a deed for the two small tracts not included in the contract she signed and acknowledged, is perfectly clear. *Campbell* v. *Beard*, 57 W. Va. 501, 511; *Milam* v. *Williams*, 73 W. Va. 467; *Dunsmore* v. *Lyle*, 87 Va. 391; Pomeroy, Spec. Perf., sec. 460. As an executory contract signed, sealed and acknowledged is not such an instrument as the statute prescribes for relinquishment of inchoate dower, it does not effect a release thereof. At the common law, dower could be released only by levying a fine or suffering a common recovery. 2 Min. Inst. 150; 2 Bl. Com. 137; Williams Real Prop. 212-13. For this remedy, a statutory one has been substituted, namely, joinder of the wife with the husband, in the execution of a writing purporting to convey title, by signature, seal and acknowledgment in a prescribed form. Code, ch. 73, secs. 4 and 6. Nothing less nor other than such an instrument so executed will suffice. 2 Min. Inst. 151. Cases in which specific performance of contracts executed by both husband and wife, for conveyance of the husband's property, has been refused, are rare and not easy to find, since in nearly all of them the agreements were signed by the husband only.

In *Lucas* v. *Scott,* 41 O. St. 636, however, the contract was signed by both, and the trial court decreed performance by the husband only, with an abatement of the purchase money for his failure to procure the wife's release. The appellate court reversed the decree. No right to relief against the wife seems even to have been claimed. Such a claim was founded on a penal bond with condition to convey, signed by husband and wife, in *Butler and Atwater* v. *Buckingham,* 5 Conn. 492, but the court unanimously rejected and disallowed it. "In the United States, the rule is well settled, that an agreement to convey entered into by the husband alone, or by the husband and wife jointly, can not be specifically enforced against the wife." 2 Scribner, Dower, p. 318, sec. 55. The entire subject is learnedly and luminously considered in *Martin* v. *Dwelly,* 6 Wend. (N. Y.) 9. It was finally held in England, under the common law, that a husband was not liable on his covenant that he and his wife would levy a fine to extinguish her right of dower. *Jordan* v. *Jones,* 2 Ph. 170; *Emery* v. *Wade,* 8 Vesey 514; 2 Scribner, Dower, 317. At common law, a widow might intervene before completion of the ceremonies incident to the levying of a fine and prevent it. 2 Scribner, Dower, p. 304. A married woman who has executed and acknowledged a deed in due form, may revoke her assent at any time before the deed is delivered. *Leland's Appeal,* 13 Pa. St. 84. A defective acknowledgment vitiates a deed as to the dower it purports to release. *Healy* v. *Rowan,* 5 Gratt. 431; *Hairston* v. *Randolph,* 12 Leigh 445; *Harkins* v. *Forsyth,* 11 Leigh 294. Even though a deed be signed, sealed and acknowledged in due form by a husband and wife, if the wife's name does not appear in the body thereof as a grantor, it does not release the dower. *Laughlin* v. *Fream,* 14 W. Va. 322. Before the enactment of ch. 9, Acts of 1895, a deed signed, sealed and acknowledged by the attorney in fact of a married woman, with her husband, under a power of attorney signed, sealed and acknowledged by her in due form, did not release her dower. *Shanks* v. *Lancaster,* 5 Gratt. 111. These and other illustrations of the strictness of the rule governing the subject of dower, to be found in the decisions, completely exclude the theory of release by estop-

pel.   Under some circumstances, estoppel bars dower, but a mere written agreement to release does not estop.   To this affect, the authorities are uniform.

Against this view, it might be urged, with some plausibility, that the language of secs. 4 and 6 of ch. 73, is broad enough to include an executory contract.   The paper contemplated is described in sec. 4 as "a writing purporting to convey real estate" and as "a deed or other writing."   Section 6 says: "such writing shall operate to convey from the wife her right of dower in the real estate embraced therein."   The word "convey," like many others has both a technical and a popular, meaning.   Technically, it applies to the legal title to real estate.   Popularly, it may apply to the equitable title to real estate or to personal property, and may be read in the sense of assign, sell or transfer.   But sec. 6 impliedly defines the paper as being a deed or equivalent writing, for it says: "If the deed be executed by a married woman, who at the time of its execution and acknowledgment, is living separate and apart" etc.   Any implication arising from the words, "a writing purporting to convey," that an executory contract passing equitable title was intended, may be answered and rebutted by the fact that deeds are sometimes known by other names and otherwise designated.   A paper conveying legal title is often styled an indenture, and frequently named a contract or agreement.   Whatever its name or form may be, it has the effect of a deed, if it passes the legal title.   To include all such instruments and avoid quibbles as to legislative intent, dependent upon the name or form of the paper, the statute describes it in the broad terms referred to.   It is to be remembered also, that there can be no such thing as an equitable title to inchoate dower.   It is not strictly an estate at all.   Again, if an executory contract barred dower, there would be no occasion for joinder of the wife in a deed, carrying the contract into effect, the final act of conveyance. These considerations and others stated demonstrate the correctness of Prof. Minor's view that the statute does not apply to any executory contract.   2 Min. Inst. 151.

The wife's acknowledgment of the contract here involved, with her husband, differentiates it from those under consider-

ation in *Lucas* v. *Scott,* 41 O. St. 636, and *Butler and Atwood*
v. *Buckingham,* 5 Conn. 492; but unless some statutory pro-
vision imparts to it efficacy beyond that given by ch. 73, Code,
it does not release the wife's dower.   Chapter 66 of the Code
greatly enlarges the powers and rights of a married woman.
Sec. 3 thereof authorizes her to take and hold to her separate
use and convey and.devise real and personal property.   Un-
less living separate and apart from her husband, she cannot
sell and convey real estate, unless her husband joins in the
deed or other writing by which the same is sold or conveyed.
Though right to decree specific performance of a mere con-
tract of sale of a married woman's separate real estate, ac-
knowledged by her and her husband, has never been ex-
pressly declared by this court, it has been impliedly asserted,
in view of the power conferred by this statute.   Contracts of
married women to convey have been declared void and un-
enforceable, because they were not acknowledged.   *Milam* v.
*Williams,* 73 W. Va. 467; *Simpson* v. *Belcher,* 61 W. Va.
157; *Amick* v. *Ellis,* 53 W. Va. 421; *Rosenour* v. *Rosenour,*
47 W. Va. 554.   If the true meaning of the statute is ex-
pressed by these implications, as it likely is, it relates only
to the separate property of married women, and sales and
convenances in which they are the real actors and parties.
Their property is the subject of disposition and the consid-
eration comes to them.   It relates to a subject of sale and
conveyance, not something that can only be released.   Strictly
and technically, inchoate dower is not a subject of sale or con-
veyance.   *Nickell* v. *Tomlinson,* 27 W. Va. 697; *Douglass* v.
*McCoy,* 5 Ohio 527; *Smith* v. *Lasher,* 5 Johns. Ch'y 247;
*Blaine* v. *Harrison,* 11 Ill. 385.   It cannot be separated from the
fee.   It can only be so released as to accompany the fee.   Though
possibly an interest in land, it cannot be treated as a separ-
ate or distinct estate therein.   As originally passed, sec. 3,
ch. 66, Code, did not mention dower, this mere incumbrance
upon title, in any way, and the only provision for release of
dower was that found in ch. 73.   The married women's stat-
ute dealt only with separate estate derived from persons
other than the husband.   Dower is not such estate.   It is a
right conferred by law, but the marital relation is one of its

constituent elements. It has never been regarded as sole and separate property. Sec. 3, ch. 66, could not have been interpreted as having any relation to dower, prior to the amendment thereof, made by the Act of 1895, authorizing a married woman to appoint an attorney in fact to convey her land and release her dower and that amendment cannot be deemed to have altered the meaning of the unchanged words preceding it. The amendment mentions dower, but affords no ground for inference of intent to authorize release thereof by the attorney in fact, otherwise than as prescribed by ch. 73, he signing, sealing and acknowledging with the husband, for the wife. Even express words in a statute dealing with one subject, broad enough to affect another, are frequently restrained in their operation and limited to the subject matter of the act in which they appear, upon a presumption against legislative intent to innovate upon the system of law applicable to the other subject. *Railway Co.* v. *Conley and Avis,* 67 W. Va. 129; *Reeves* v. *Ross,* 62 W. Va. 7; *Brown* v. *Gates,* 15 W. Va. 131. In sec. 3, ch. 66, there are no such words to be restrained. There can be nothing more than a mere claim of intent arising by implication or inference, and the inference is not a necessary one, even though ground for it in the terms of the statute, be conceded.

Inability of the vendee to obtain perfect and unincumbered title confers upon him right to abandon the contract and no doubt gives him right of recovery of damages against the estate of Crookshanks for breach of the contract. He may also have the alternative right to take such title as can be obtained from the heirs by a decree of specific performance against them. What he may desire to do, under the circumstances, the pleadings do not disclose, wherefore it is unnecessary and improper to enter upon any inquiry as to what rights he may assert in this suit.

For the reasons stated, the decree complained of will be reversed and the cause remanded for such relief as the vendee may be entitled to against the heirs, if any, upon such exercise of his right of election as he may see fit to make in this cause.

*Reversed and remanded.*