Harry A. Connell

*v.*

Edward P. Connell, *et al.*

(No. 9955)

Submitted February 3, 1948. Decided March 9, 1948.

*Okey P. Keadle,* for appellants.

*Duncan W. Daugherty,* for appellee.

Kenna, Judge:

This proceeding in chancery was brought in the Circuit Court of Cabell County by Harry A. Connell, alleging ownership in fee subject to a life estate in his father, William J. Connell, against Edward P. Connell, Josephine A. Ney, William J. Connell, H. L. Johnson and McDaniel Purcell, Trustee, for the purpose of setting aside a deed dated the 28th day of October, 1944, executed by Anne P. Connell as attorney in fact for Harry A. Connell and Evelyn Mann Connell, his wife, conveying to H. L. Johnson a house and lot in the City of Huntington, here called

for convenience 1504 Sixth Avenue; a deed dated November 3, 1944, conveying the same property from H. L. Johnson and wife to William J. Connell and Anne P. Connell; and a trust deed of the same date and for the same property from William J. Connell and Anne P. Connell, his wife, to McDaniel Purcell, Trustee. Anne P. Connell died in January, 1946. The bill of complaint prayed for, and the court granted, an ancillary injunction inhibiting sale under the deed of trust attacked.

The answer of Edward P. Connell and Josephine A. Ney, in substance, alleges that the deed under which the plaintiff, Harry A. Connell, claims title was made by William J. Connell and Anne P. Connell and was executed with the understanding that the grantors at any time they saw fit to do so would have the right to dispose of the property conveyed and to use the proceeds for their maintenance and support; that the power of attorney was executed in order that that understanding might be readily carried into effect; that the power of attorney is a valid and binding paper as are the instruments under attack in this proceeding. It also alleges facts that sufficiently show their right to an equitable lien upon the property involved.

The answer of McDaniel Purcell, Trustee, asserts the validity of the power of attorney, the conveyance executed pursuant thereto by Anne P. Connell, the conveyance by Hugh L. Johnson to William J. and Anne P. Connell, and the trust deed from Mr. and Mrs. Connell to him as trustee.

Upon final submission after taking of testimony the relief prayed for was granted in so far as setting aside the named conveyances is concerned. The trial chancellor further undertook to determine the equitable interest of the parties involved in 1504 Sixth Avenue by allowing Edward P. Connell and Josephine A. Ney a first lien upon the property involved for $2,561.00 with $341.89 interest and the additional sum of $1,395.88 as payment of the plaintiff's portion of the actual cost of maintenance of his father and mother advanced by the defendants named

prior to the bringing of this proceeding. The allowance of $1,395.88 having been made under Code, 9-11-6, the defendants in error cross assign, asking that that allowance be set aside. The effect of the circuit court's decree having been to vest in the plaintiff, Harry P. Connell, the fee simple of the property in controversy, subject to his father's life estate, the decree ordered him to pay the named defendants the amounts adjudicated as constituting a lien within thirty days of the entry of the decree or, upon failure, that the property be sold by a named special commissioner. This appeal was granted upon the petition of Edward P. Connell and Josephine A. Ney, the trust deed creditors the enforcement of whose asserted lien was enjoined.

In the early nineteen thirties William J. Connell, at the time of submission a retired general contractor, aged eighty-seven, and his wife, who died in January, 1946, immediately prior to the institution of this suit, at the age of eighty-five, owned a home near the City of Huntington on Russell Creek. This property was their sole possession of value. Their only children were the plaintiff, Harry A. Connell, a pharmacist employed in Philippi, the defendant Edward P. Connell, whose home is in Wheeling, where he is employed by the Harris Calorific Sales Company of Cleveland, Ohio, a corporation in which he is a minority stockholder, and Carl H. Connell, who lives in Warren, Ohio, and whose employment does not appear. Until the period covered by this controversy, or until the early part of the year 1944, when their mother's last illness was determined to be cancer of the rectum, the three sons may be said to have contributed to the support of their parents in proportion to their means, their father having then reached the age of eighty-six, Edward's income and resources apparently exceeding those of Harry and Carl, respectively.

In 1943 the father and mother sold their Russell Creek property and with the entire net proceeds of that sale purchased 1504 Sixth Avenue. As a part of the transaction they arranged to have a deed of trust securing

Hugh L. Johnson in the amount of $2,000.00 transferred to the property they were buying and, in addition, in order to clear the title upon the property they were selling borrowed $500.00 more from Johnson, executing a deed of trust to secure him in the amount of $2,500.00. Less than a year thereafter Mrs. Connell's distressingly lingering last illness was discovered, with the encumbered piece of real estate the only property of either her or her husband.

After the disease from which Mrs. Connell was suffering had been correctly diagnosed and after she had undergone the first of two surgical operations performed before her death, at her suggestion the property at 1504 Sixth Avenue was conveyed by her husband and her to Harry A. Connell for a nominal consideration and the assumption by him of the lien standing of record against it, the grantors reserving joint and several life estates, coupled with a verbal understanding that they could dispose of the property as they saw fit. It is the contention of the plaintiff that this transfer was made as an unrestricted gift of the entire interest of his parents in the property to him, Harry, subject to the life estates reserved, while the defendants contend that it was made because Mr. and Mrs. Connell were troubled and disturbed by the intention of their son, Edward, to seek a divorce which would likely occur after their death and which would possibly result in a controversy over the beneficial ownership of the only property they owned. Edward Connell testified that he was the plaintiff in a pending divorce proceeding to be disposed of by an uncontested decree. Defendants further contend that it is extremely unlikely that a couple of the ages of their father and mother would give away their only resource when Mrs. Connell's illness had become, and would continue, a financial burden far in excess of their ordinary living expenses paid by others.

On the 31st day of August, 1944, Harry A. Connell and wife executed and acknowlegded a power of attorney giving to Anne P. Connell, his mother, the unlimited power ·to dispose of 1504 Sixth Avenue. The plaintiff's

position is that this power of attorney was executed merely as a matter of convenience, his home being in Philippi and that of the named attorney in fact in Huntington. On the other hand, the defendants say that, in spite of the fact that the father and mother occupied and owned a life estate in 1504 Sixth Avenue, they became greatly disturbed by constant reports that it was the purpose of Harry Connell to remodel the dwelling so that the ground floor could be rented as a separate apartment, the old people live on the second floor and Harry and his wife occupy the third floor, this in spite of his mother's physical condition at the time. Impelled by the report, William J. Connell, believing that they should have a paper to depend upon in lieu of the verbal understanding with Harry, procured the power of attorney under the belief that it would suffice. It bears date the 31st day of August, 1944, twenty-four days after the conveyance to Harry, sixty-four days before the execution of the deed of trust here under attack and about a year and four months before the death of Mrs. Connell.

As Mrs. Connell's condition became more serious, the old people needed financial help beyond the ordinary contributions of their three sons, and beyond the ability of Carl and Harry to contribute, with the result that either they turned to Edward or he came to their relief with the assistance of his business associate, Josephine A. Ney, who owned a controlling interest in the company by which he was employed. At any rate, by deed dated the 28th day of October, 1944, and acknowledged on the 3d day of November, Harry A. Connell and Evelyn Mann Connell, his wife, by Anne P. Connell, attorney in fact, conveyed 1504 Sixth Avenue to H. L. Johnson, to secure whom in the principal sum of $2,500.00 there was then a deed of trust on the property. By deed dated November 3, 1944, H. L. Johnson and wife conveyed the property in question to William J. Connell and Anne P. Connell who in turn on the same date executed a deed of trust to McDaniel Purcell, Trustee, to secure their note for $2,561.00 made to the order of Edward C. Connell and Josephine A. Ney, payable on demand, and to secure also all further

advances to the grantors that might be made by the trust deed creditors and evidenced by a note executed by William J. Connell and Anne P. Connell or either of them. The amount immediately secured by this deed of trust, $2,561.00, was used to discharge the deed of trust securing the indebtedness of Hugh L. Johnson. This sum with the addition of nine advancements which followed evidenced by the promissory notes of William J. and Anne P. Connell, with one exception which was signed by the father after his wife's death, made the total indebtedness payable to Edward P. Connell and Josephine A. Ney amount to $9,865.00. The deed executed by Anne P. Connell as attorney in fact to Hugh L. Johnson, the deed from Johnson and wife to William J. Connell and Anne P. Connell and the trust deed executed by them to McDaniel Purcell, Trustee, were made without the knowledge or consent of Harry A. Connell.

Immediately following his mother's death Edward P. Connell, under the belief that there might be a flaw in his father's title, suggested to Harry A. Connell, who was at that time informed concerning the transfers, that he execute a quit-claim to his father. This, however, he refused to do with the result that Edward took immediate steps to enforce the deed of trust securing him and Josephine A. Ney. This course of action resulted in the immediate bringing of this suit and the final decree above described.

We believe that the cross-assignment of error is to be disposed of first, since it requires only a brief discussion. The section referred to, Code, 9-11-6, is included in the chapter that relates only to the Department of Public Assistance and provides that its county council may proceed by motion in the circuit court for reimbursement of sums by it actually expended for the support of an indigent person and to collect future allowances found by the court to be just and proper. This section makes the children of the beneficiary first liable for the amount advanced by the county council and for future payments to the indigent person if they "are of sufficient ability". Since we are not here concerned with an allowance for

public assistance and since the county council is not shown to have proceeded, the section invoked by the trial court does not apply. Our attention has not been directed to a statutory provision which would justify a recovery of advances made to support parents by one son as against another. We, therefore, are of opinion that the cross-assignment of error should be sustained.

We are of the opinion that Anne P. Connell as attorney in fact attempted circuitously to transfer the property described in the power of attorney to herself and her husband. We are of the opinion that the decree holding invalid the deed to Hugh L. Johnson executed by virtue of the power of attorney who immediately attempted to convey to Anne P. Connell and William J. Connell is without error in so far as it affects the bare legal title. According to the wording of the power of attorney, Anne P. Connell's authority to deal with the property of the donee was to be exercised "upon such terms and conditions as my said attorney may deem proper for my best interests". Since, in our opinion, the attorney in fact and her husband were before that the holders of the equitable title of the property involved, her conduct cannot be said to have been fraudulent, yet it is evident that she exceeded the powers expressly conferred upon her by the power of attorney. Furthermore, it is open to serious question whether an attorney in fact can, without a full disclosure to the donee, deal with himself either directly or indirectly. It may be true, as contended by the defendants, that the purpose of the power of attorney was to protect the interests of William J. Connell and Anne P. Connell and, in effect, to transfer the legal title to Anne P. Connell. The actual instrument did not so operate, regardless of the equities involved. The very wording of the power of attorney prevents that construction although, under the circumstances then existing, it is extremely difficult to conclude that it was intended as an instrument of convenience in the event of an actual sale of 1504 Sixth Avenue. We do believe that it may be viewed as constituting a tacit admission of the contention of the defendants to the effect that Harry considered him-

self verbally obligated to comply with the joint request of his father and mother concerning the disposition to be made of their property. We would affirm the decree to the extent that it set aside the deed from Anne P. Connell as attorney in fact to Hugh L. Johnson, the deed from Hugh L. Johnson to William J. Connell and Anne P. Connell and the trust deed from William J. Connell and Anne P. Connell to Purcell, Trustee, holding that those transfers, as between the parties to this suit, concern only the bare legal title.

We believe also that the matter of the equitable interest of the parties now before the Court in 1504 Sixth Avenue is not difficult to resolve. Carl Connell, one of the three sons, though he habitually contributed to the support of his mother and father to the extent that his means justified, does not contend that he is entitled to an interest prior to the indebtedness due Edward Connell and Josephine A. Ney, who advanced the sums to meet the extraordinary expenditures occasioned by his mother's last illness. Harry Connell, during both the year 1944 and the year 1945, did not exceed his customary contribution amounting to approximately $10.00 per week. He seems to have been indebted to his mother and father in the admitted sum of $700.00 plus interest from a year in the early thirties. Edward Connell, during the latter part of the year 1944, the year 1945 and to February, 1946, procured for and advanced to his parents approximately $7,300.00 evidenced by their joint notes, eight in number, and by his father's note made after his mother's death. This sum was advanced to his mother and father in the belief that it was secured by a valid deed of trust. We are of the opinion that during the period of the advancement of this sum of money Anne P. Connell and William J. Connell were the equitable owners of the property in question although the legal title was at that time, and now is, vested in Harry A. Connell. That being so, we believe that the principle enunciated in *Milligan Coal Company* v. *Polowy*, 108 W. Va. 458, 151 S. E. 429, is controlling. The syllabus in that case reads as follows:

"An equitable lien to charge some particular property with a debt or obligation may be implied and declared by a court of equity out of general consideration of right and justice as applied to the relation of the parties and the circumstances of their dealings."

In spite of the fact that the above syllabus does not distinguish between real and personal property, we are not here confronted with the rather involved question of whether it is necessary to have a written memorandum in compliance with the statute of frauds in order to create an equitable lien upon real estate. See *Spencer* v. *Williams,* 113 W. Va. 687, 170 S. E. 179, 89 A. L. R. 1451, annotated at 1455. At the time that William J. Connell and Anne P. Connell executed the deed of trust to McDaniel Purcell, Trustee, or on November 3, 1944, the grantors were the equitable owners of 1504 Sixth Avenue, though the legal title, subject to encumbrances and a life estate in them, was in Harry A. Connell. Being the owners of an equitable estate only, they undertook to transfer the legal title to the named trustee. This undertaking failed. However, the effort to create the lien of course was evidenced by a writing the provisions of which plainly complied with the statute of frauds. Under circumstances where the "attending equities" can be met only by the existence of a lien upon real estate, the attempted deed of trust executed by the owners of the equity is sufficient to permit the creation of an equitable lien. See *Holley's Executor* v. *Curry,* 58 W. Va. 70, 51 S. E. 135, in which a deed of trust without a seal and consequently not conveying the legal title was held good as an equitable mortage.

In our opinion Harry A. Connell is vested with the bare legal title in 1504 Sixth Avenue in the City of Huntington, the equitable title being vested jointly one half in their father, William J. Connell, and the other half in the heirs-at-law of their mother who died intestate, Carl, Harry and Edward Connell, subject to an equitable first lien of an indebtedness totalling $9,865.00 due and owing to Edward Connell and Josephine A. Ney as their interests may

appear. Since Carl H. Connell, in our opinion, owns an equitable interest in the property in controversy, it will be necessary to make him a party to this proceeding.

In the light of the foregoing, the decree of the Circuit Court of Cabell County is reversed and the cause remanded for further development in conformity herewith.

*Reversed and remanded.*