379 S.E.2d 149

**Roxanne TIMBERLAKE**

v.

**Sherry L. (Timberlake) HEFLIN, et al.**

No. 17978.

Supreme Court of Appeals of
West Virginia.

March 13, 1989.

William R. DeHaven, Martinsburg, for appellant.

Cynthia Bowles, Bowles, Reynolds & Risavi, Martinsburg, for appellee.

MILLER, Justice:

We consider in this case the enforceability of a parol contract for the transfer of certain joint property between husband and wife. The Berkeley County Circuit Court concluded that the contract was unenforceable due to the lack of a memorandum sufficient to comply with W.Va.Code, 36–1–3. We conclude that there was sufficient compliance.

## I.

■ Richard L. Timberlake and Sherry L. Timberlake were married on July 24, 1976. They purchased a two-bedroom home in Berkeley County on June 9, 1977. Their deed expressly provided that they were to hold the property as joint tenants with the right of survivorship.[1]

Mr. Timberlake asserts in this suit for specific performance that sometime prior to July, 1983, he and his wife (who has since remarried and is now named Ms. Heflin) contemplated a divorce. They entered into a parol contract for the division of their marital assets. Under that contract, Mr. Timberlake was to transfer his interest in a jointly owned automobile, motorcycle, and other personal property. Ms. Heflin, in turn, was to execute and deliver a deed for her interest in the marital home.

Mr. Timberlake's complaint states that on July 22, 1983, Ms. Heflin filed a suit for divorce in the Berkeley County Circuit Court. The divorce complaint was accompanied by a signed affidavit in which Ms. Heflin stated, under oath, that the averments set forth therein were true and accurate. One of these averments stated:

"Plaintiff [Ms. Heflin] says taht [sic] she agrees to convey her interest to the Defendant in the jointly owned real estate, to wit: a two bedroom home located in Berkeley County, West Virginia, and known for postal purposes as P.O. Box 42, Hedgesville, West Virginia."

Mr. Timberlake's complaint also stated that upon being served with the divorce papers, he took no action in reliance on the parol agreement with his wife. On August 31, 1984, the circuit court entered a final order that divided some of the couple's joint assets, but made no disposition of the marital home.

The complaint further averred that so far as the contract dealt with real estate, it was not subject to W.Va.Code, 36–1–3, the statute of frauds, as "there [was] a writing, . . . duly verified and acknowledged, which operate[d] as an exception to said [s]tatute." Mr. Timberlake requested entry of an order to direct the transfer of fee simple title in the marital home. Ronald Heflin was joined so as to require transfer of his dower interest.[2] Mr. and Ms. Heflin filed a joint motion to dismiss the complaint because the statute of frauds barred enforcement of Mr. Timberlake's claim.

By order entered on October 24, 1986, the circuit court dismissed Mr. Timberlake's complaint. The court concluded that the averments in the divorce complaint, relied on by Mr. Timberlake, "[could] not be taken as fact and must be independently proved." For this reason, the suit remained subject to the statute of frauds and was barred. This appeal followed.[3]

1. W.Va.Code, 36–1–19, creates, in effect, a presumption against survivorship in joint tenancies. This presumption is overridden if, as provided in W.Va.Code, 36–1–20(a), "it manifestly appears from the tenor of the instrument that it was intended that the part of the one dying should then belong to the others." *E.g., Herring v. Carroll*, 171 W.Va. 516, 300 S.E.2d 629 (1983); *DeLong v. Farmers Bldg. & Loan Ass'n*, 148 W.Va. 625, 137 S.E.2d 11 (1964). The parties do not dispute that the requirements of W.Va.Code, 36–1–20(a), are met.

2. W.Va.Code, 43–1–1, provides as follows:
   "A surviving spouse shall be endowed of one third of all the real estate whereof the

deceased spouse, or any other to his or her use, or in trust for him or her, was, at any time during the coverture, seised of or entitled to an estate of inheritance, either in possession, reversion, remainder, or otherwise, unless the right of such surviving spouse to such dower shall have been lawfully barred or relinquished."

3. Mr. Timberlake died after his petition for appeal was accepted and Roxanne Timberlake, executor of his estate, was substituted as the appellant pursuant to Rule 26 of the Rules of Appellate Procedure. We shall, for purposes of clarity, refer to Mr. Timberlake as the appellant in the text of the opinion.

## II.

The prohibition in the statute of frauds against parol contracts for the sale of land, or the lease thereof for more than one year, is contained in W.Va.Code, 36–1–3, which provides:

> "No contract for the sale of land, or the lease thereof for more than one year, shall be enforceable unless the contract *or some note or memorandum thereof* be in writing and signed by the party to be charged thereby, or by his agent. But the consideration need not be set forth or expressed in the writing, and it may be proved by other evidence." (Emphasis added).

This Code section is often referred to as the statute of frauds. However, our main frauds statute, found in W.Va.Code, 55–1–1, embraces a number of other contracts which, to be enforceable, must be in writing and signed by the party to be charged.[4]

Mr. Timberlake's basic argument is that the divorce complaint filed by Ms. Heflin is a sufficient memorandum of their parol contract to meet the requirements of W.Va.Code, 36–1–3, and permit his suit for specific performance. Ms. Heflin says in response that the complaint contains bare assertions of fact and that it cannot, therefore, qualify as a memorandum. Thus, the initial issue is a rather limited one: Wheth-er a judicial pleading can constitute a memorandum under the statute of frauds.

We note first that W.Va.Code, 36–1–3, does not itself specify a particular type of writing that is necessary to satisfy the memorandum requirement. Its wording suggests a degree of flexibility, as the language identifies several forms of writings: "the contract or some note or memorandum thereof." Certainly, our prior cases demonstrate that a memorandum under W.Va.Code, 36–1–3, need not take any particular form. *E.g., Connell v. Connell,* 131 W.Va. 209, 46 S.E.2d 724 (1948) (deed of trust); *Tearney v. Marmiom,* 103 W.Va. 394, 137 S.E. 543 (1927) (defective will); *Lawrence v. Potter,* 91 W.Va. 361, 113 S.E. 266 (1922) (telegram).

We recognize, as have other courts, that a pleading may, in appropriate circumstances, be sufficient to take a parol contract out of the statute of frauds.[5] In a related line of cases, representative of the modern trend, courts have crafted a "judicial admission" exception to the statute of frauds. *Wemhoff v. Investors Management Corp. of America,* 528 A.2d 1205 (D.C.App.1987); *Wolf v. Crosby,* 377 A.2d 22 (Del. Ch.1977); *Kalman v. Bertacchi,* 57 Ill.App.3d 542, 15 Ill.Dec. 204, 373 N.E.2d 550 (1978); *Sealock v. Hackley,* 186 Md. 49, 45 A.2d 744 (1946); *Zlotziver v.*

---

**4.** W.Va.Code, 55–1–1, provides:

"No action shall be brought in any of the following cases:

"(a) To charge any person upon or by reason of a representation or assurance concerning the character, conduct, credit, ability, trade, or dealings of another, to the intent or purpose that such other may obtain thereby credit, money, or goods; or

"(b) To charge any person upon a promise made, after full age, to pay a debt contracted during infancy; or upon a ratification after full age, of a promise or simple contract made during infancy; or

"(c) To charge a personal representative upon a promise to answer any debt or damages out of his own estate; or

"(d) To charge any person upon a promise to answer for the debt, default, or misdoings of another; or

"(e) Upon any agreement made upon consideration of marriage; or

"(f) Upon any agreement that is not to be performed within a year;

"Unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or not thereof, be in writing and signed by the party to be charged thereby or his agent. But the consideration need not be set forth or expressed in the writing; and it may proved (where a consideration is necessary) by other evidence."

Because of the substantial similarity between the last sentence of the statute of frauds and the language of W.Va.Code, 36–1–3, cases involving the sufficiency of the writing under the statute of frauds are helpful in construing W.Va.Code, 36–1–3.

**5.** *E.g., Poulos v. Reda,* 165 Ill.App.3d 793, 117 Ill.Dec. 465, 520 N.E.2d 816 (1987); *In Re Estate of Meledandri,* 108 Misc.2d 972, 437 N.Y.S.2d 996 (1981); *McCall v. Lee,* 182 N.C. 114, 108 S.E. 390 (1921); *Robert Harmon & Bore, Inc. v. Jenkins,* 282 S.C. 189, 318 S.E.2d 371 (App.1984); *Browder v. Mitchell,* 187 Va. 781, 48 S.E.2d 221 (1948); 72 Am.Jur.2d *Statute of Frauds* § 307 (1974); 4 S. Williston, *Williston on Contracts* § 568 (3d ed. 1961).

*Zlotziver*, 355 Pa. 299, 49 A.2d 779 (1946); *Adams–Riker, Inc. v. Nightingale*, 119 R.I. 862, 383 A.2d 1042 (1978); *Powers v. Hastings*, 20 Wash.App. 837, 582 P.2d 897 (1978), *aff'd*, 93 Wash.2d 709, 612 P.2d 371 (1980).

■ These cases hold that any admission of a contract made in the course of judicial proceedings will render the statute of frauds inoperative. The "judicial admission" exception is read broadly to include even parol admissions in depositions or in open court. This result is said to be in harmony with the policy that underlies the statute of frauds: Its purpose is to prevent the fraudulent enforcement of unmade contracts, not the legitimate enforcement of contracts that were in fact made. 2 A. Corbin, *Corbin on Contracts* § 498 (1950 & 1984 Supp.).

We also have settled law in this state that statements contained in pleadings may be judicial admissions and, therefore, conclusive of the facts so stated. *Guthrie v. First Huntington Nat'l Bank*, 155 W.Va. 496, 184 S.E.2d 628 (1971); *Gardner v. Gardner*, 144 W.Va. 630, 110 S.E.2d 495 (1959); *Calhoun County Bank v. Ellison*, 133 W.Va. 9, 54 S.E.2d 182 (1949); F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 8.5(C) (2d ed. 1986).

■ It would appear to us that, under the foregoing law, a pleading in a civil case may satisfy the requirement of a memorandum under W.Va.Code, 36–1–3.

### III.

■ It is important to recall that the statute of frauds, as applicable to contracts for the sale or lease of land, is a procedural bar to prevent enforcement of oral contracts unless the conditions expressed in W.Va.Code, 36–1–3, are met. Once they are met, then the terms of the oral contract

can be proved. We summarized this principle in *Ross v. Midelburg*, 129 W.Va. 851, 866, 42 S.E.2d 185, 193 (1947): "The operation of the statute of frauds goes only to the remedy; it does not render the contract void. *Gibson v. Stalnaker*, 87 W.Va. 710, 106 S.E. 243, 33 A.L.R. 1502 (1921)." [6] This same rule exists with regard to our general statute of frauds, W.Va.Code, 55–1–1. *See Oates v. Oates*, 127 W.Va. 469, 33 S.E.2d 457 (1945); *Jones v. Shipley*, 122 W.Va. 65, 7 S.E.2d 346 (1940).[7]

■ With these principles in mind, we proceed to review the sufficiency of the memorandum. W.Va.Code, 36–1–3, contains two express requirements. The memorandum must be (1) in writing, and (2) signed by the party against whom performance is demanded. These requirements are met in the case at hand. The complaint was typewritten and the affidavit accompanying it was signed by Ms. Heflin.

In addition to these express requirements, our cases require that the memorandum must contain a description of the involved land and must also contain the essential elements of the contract. *See Harper v. Pauley*, 139 W.Va. 17, 81 S.E.2d 728 (1953); *Milton Bradley Co. v. Moore*, 91 W.Va. 77, 112 S.E. 236 (1922).

■ We turn first to the property description. It need not be precise, but only reasonably certain, and the court can receive extrinsic evidence to complete the description. What is required is merely that the memorandum contain the "key" or "foundation" words from which the description may, by other evidence, be made complete and certain. We summarized these principles in the Syllabus of *Harper v. Pauley, supra:*

> " 'Every agreement required by the statute of frauds to be in writing must be certain in itself or capable of being made so by reference to something else,

---

6. *Ross* also points out that prior to the 1931 revisions to the West Virginia Code, the provisions of W.Va.Code, 36–1–3, were included within the general statute of frauds. W.Va.Code, 55–1–1.

7. In *Drake v. Livesay*, 231 Va. 117, 120, 341 S.E.2d 186, 188 (1986), the Virginia Supreme

Court had this to say about its similar statute of frauds: "When the bar is removed, it is the oral contract which is subject to enforcement, not the memorandum. Because the memorandum serves only to remove a bar to the enforcement of the oral contract, the validity of the oral contract may be established by other evidence."

whereby the terms can be ascertained with reasonable certainty. And in contracts for the sale of lands the court may go outside of the writing for the purpose of identifying and ascertaining the land sold, where general words of description capable of being made certain are used in the writing.' Point 2, Syllabus, *White v. Core*, 20 W.Va. 272."

We find the description of the property to be sufficient under *Harper*. The complaint refers to the couple's "jointly owned real estate," and provides a description of the home situated on that tract. Also provided is the town, county, and state, including the postal address of the home, from which a more complete metes and bounds description may readily be ascertained. Numerous jurisdictions have found a street or postal address to be a sufficient description under the statute of frauds. *E.g., Sternberg v. Infante*, 13 Conn.App. 473, 537 A.2d 523 (1988); *Clay v. Hanson*, 536 A.2d 1097 (D.C.App.1988); *Butler v. Lovoll*, 96 Nev. 931, 620 P.2d 1251 (1980); *Birnhak v. Vaccaro*, 47 A.D.2d 915, 367 N.Y.S.2d 792 (1975); *Hebisen v. Nassau Devel. Co.*, 754 S.W.2d 345 (Tex.App.1988). In *Jones v. Hudson*, 160 W.Va. 518, 236 S.E.2d 38 (1977), we held that a memorandum which identified certain farm property as "[o]ne hundred (100) acres, more or less, located on the waters of Big Run," was sufficient to withstand a motion to dismiss. *See also Drake v. Livesay*, 231 Va. 117, 341 S.E.2d 186 (1986).[8]

The question of what essential elements of a land contract must be placed in the memorandum is rather ambiguous. The statute expressly provides that "the consideration need not be set forth or expressed in the writing, and it may be proved by other evidence."

We have indicated in several cases that the memorandum must disclose an intent to sell. *E.g., Harper v. Pauley*, 139 W.Va. at 27–28, 81 S.E.2d at 735; *see also Crookshanks v. Ransbarger*, 80 W.Va. 21, 24, 92 S.E. 78, 79 (1917). Here, there is no question of such an intention since the memorandum states that Ms. Heflin "agrees to convey her interest." Our cases often hold a memorandum sufficient when the party to be charged signs it, and the description is found to be adequate. *E.g., Sponaugle v. Warner*, 98 W.Va. 532, 127 S.E. 403 (1925); *Day v. Kramer*, 87 W.Va. 777, 106 S.E. 128 (1921); *Kight v. Kight*, 64 W.Va. 519, 63 S.E. 335 (1908).

There also appear to be certain presumptions that are made by courts to establish the essential elements. One of these is that "where in a sale of land there is no time fixed for the payment of the consideration, courts will assume that the parties intended a cash transaction." *Donahue v. Rafferty*, 82 W.Va. 535, 540, 96 S.E. 935, 937 (1918). *See also Drake v. Livesay, supra.*

*Donahue* illustrates another such presumption. Where there is some ambiguity in the memorandum "and the bill [for specific performance] sets forth in detail the terms ... [,] when read together they set forth a contract sufficient upon demurrer to satisfy the statute of frauds." Syllabus Point 6, in part, *Donahue v. Rafferty, supra*.[9] In view of the foregoing authority,

---

8. We note that the parties also refer to W.Va. Code, 48–3–9, which provides: "A contract between a husband and wife shall not be enforceable at law, unless such contract, or some memorandum or note thereof, be in writing and signed by the party to be charged thereby."

This statute abolishes the common law rule that a married woman was incompetent to contract, but retains some restrictions applicable to contracts between husband and wife. The two requirements set out in W.Va.Code, 48–3–9, substantially parallel those in W.Va.Code, 36–1–3. Since the requirements in the former are clearly no more restrictive than those in the latter, we do not undertake a separate analysis.

9. The full text of Syllabus Point 6 of *Donahue* is:

"When a memorandum of a contract for the sale of real estate, sufficient in other respects to satisfy the requirements of the statute of frauds, does not expressly state the terms upon which the consideration is to be paid, but does specify that it is 'to be settled for in accordance with terms and conditions announced,' and the bill sets forth in detail the terms announced, when read together they set forth a contract sufficient upon demurrer to satisfy the statute of frauds."

we find the memorandum to be adequate in this case.

## IV.

We consider finally the effect of the survivorship clause in the deed. Ms. Heflin asserts that on Mr. Timberlake's death, while this case was on appeal, his interest in the property passed to her as the survivor and that such interest was unaffected by the parol contract.

■ When the contract of sale was made, the doctrine of equitable conversion came into play. We spoke to the effect of this doctrine on the vendor and purchaser in *Maudru v. Humphreys,* 83 W.Va. 307, 310–11, 98 S.E. 259, 260 (1919):

"After the execution of a valid contract of sale and before the legal title passes by deed, the vendor is regarded in equity as holding the legal title in trust for the vendee, and the latter as holding the purchase money in trust for the vendor. The purchaser thereby acquires a vendable interest, an equitable estate which, at his death, descends to his heirs in the same manner as a legal estate." (Citations omitted).

*See also Bryant v. Willison Real Estate Co.,* 177 W.Va. 120, 122, 350 S.E.2d 748, 750 (1986). *See generally* 77 Am.Jur.2d *Vendor and Purchaser* § 316 (1975).

■ Thus, the oral contract for the sale of land became enforceable when in July, 1983, Ms. Heflin acknowledged the contract in her divorce complaint. Mr. Timberlake, as the purchaser or vendee, acquired equitable title to Ms. Heflin's one-half interest in the property as outlined in *Maudru.* Furthermore, on his death, again as indicated in *Maudru,* his interest was not extinguished, but passed to his heirs at law. General law recognizes the right to specific performance in this situation. *See generally* 77 Am.Jur.2d *Vendor and Purchaser* § 321 (1975).

The foregoing discussion does not touch Mr. Timberlake's own one-half interest which, under the survivorship clause of the deed, would also pass to Ms. Heflin. We

have not encountered a case in this jurisdiction that is dispositive of this issue.

There are cases elsewhere that have declined to give effect to the survivorship clause in similar circumstances. These cases proceed on the theory that the vendor would be unjustly enriched by frustrating the contractual intention of the parties and obtaining the deceased purchaser's interest. *Bruce v. Dyer,* 309 Md. 421, 524 A.2d 777 (1987); *Pavluvcik v. Sullivan,* 22 Mass.App. 581, 495 N.E.2d 869 (1986); *Shutt v. Butner,* 62 N.C.App. 701, 303 S.E.2d 399, *appeal denied,* 309 N.C. 462, 307 S.E.2d 367 (1983); *Gulick v. Hawkins,* 214 Va. 116, 197 S.E.2d 334 (1973). We have recognized that a constructive trust may be imposed to prevent unjust enrichment, as we said in *Annon v. Lucas,* 155 W.Va. 368, 382, 185 S.E.2d 343, 352 (1971):

"A constructive trust is substantially an appropriate remedy against unjust enrichment. It is raised by equity in respect of property which has been acquired by fraud, or where, although acquired originally without fraud, it is against equity that it should be retained by the person holding it.... [A]ny transaction may be the basis for creating a constructive trust where for any reason the defendant holds funds which in equity and good conscience should be possessed by the plaintiff." (Citations omitted).

*See also Patterson v. Patterson,* 167 W.Va. 1, 277 S.E.2d 709 (1981), *overruled on other grounds, LaRue v. LaRue,* 172 W.Va. 158, 304 S.E.2d 312 (1983).

■ We, therefore, conclude that where a joint tenant with a right of survivorship has contracted to buy a fellow joint tenant's interest, the death of the purchaser does not operate to permit the survivorship incident in the deed to transfer his interest, if the purchaser's heirs or administrator are willing to complete the purchase contract.

For the foregoing reasons, we conclude that Mr. Timberlake's complaint was improperly dismissed. The judgment of the Circuit Court of Berkeley County is, therefore, reversed and the case is remanded for

further proceedings not inconsistent with this opinion.

Reversed and remanded.

Justice McGRAW participated and concurred in this decision, but departed from the Court prior to the preparation of the opinion.

Justice WORKMAN did not participate in the consideration or decision of this case.