497 S.E.2d 541

**FRY RACING ENTERPRISES, INC.,**
**Plaintiff below, Appellant,**

v.

**Donald A. CHAPMAN, individually and**
**d/b/a Ona Speedway, Defendants**
**below, Appellees.**

No. 23987.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 16, 1997.

Decided Oct. 24, 1997.

Dissenting Opinion of Justice
Starcher Dec. 17, 1997.

James W. St. Clair, St. Clair & Levine, Huntington, for Appellant.

Daniel A. Earl, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, for Appellees.

PER CURIAM: [1]

In this case we are asked to review the granting of summary judgment and the application of the statute of frauds, *W.Va.Code*, 55–1–1 [1990], in a contract action. The plaintiff-appellant, Fry Racing Enterprises, Inc. ("Fry"), alleges that it was a party to an oral, three-year contract with the defendant-appellee Donald A. Chapman ("Chapman"). The plaintiff claims that it began to perform according to the terms of the agreement, but that after only three months the defendant terminated the agreement without cause. The plaintiff filed this action for damages under the contract.

In the circuit court, the defendant moved for summary judgment pursuant to *West Virginia Rules of Civil Procedure*

---

1. We point out that a *per curiam* opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992) (*"Per curiam* opinions . . . are used to decide only the specific case before the Court; everything in a *per curiam* opinion beyond the syllabus point is merely *obiter dicta* . . . . Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published *per curiam* opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a *per curiam* opinion.")

("*W.Va.R.C.P.*") Rule 56 [1978], arguing that if such a contract had been formed, its enforcement was barred by the statute of frauds requirement that contracts not to be performed within one year must be memorialized in some writing or memorandum. The circuit court granted summary judgment to the defendant, and we affirm the court's order.

## I.

Defendant Chapman began to operate an automobile racetrack known as the Ona Speedway in Ona, West Virginia in early 1995. Beginning in April 1995, plaintiff Fry was allowed to sell racing tires and fuel to race participants without a written agreement between the parties. On July 20, 1995, Chapman informed Fry that it would no longer be allowed to sell products at the racetrack.

On August 23, 1995, Fry filed this lawsuit against Chapman alleging that, in March 1995, the parties had entered into an oral three-year agreement for plaintiff Fry to sell racing tires and fuel at the racetrack. The plaintiff also alleged that it spent $17,600.00 on tires and equipment pursuant to the contract, and that the defendant had canceled the contract without cause. The plaintiff's complaint sought money damages.

After conducting limited discovery, the defendant moved for summary judgment contending that no contract existed between the parties, and asserting that if there was a contract, then the plaintiff's claims were barred by the statute of frauds' requirement that agreements "not to be performed within a year" must be in writing. *W.Va.Code*, 55–1–1 [1990].[2]

In opposition to the motion for summary judgment, the plaintiff argued that a document signed in March 1995 by both parties and a distributor for the Goodyear Tire and Rubber Company (the "Goodyear document")[3] was a sufficient memorandum of an agreement between the parties. The plaintiff also argued that his partial performance of the alleged agreement took the agreement outside the requirements of the statute of frauds.

On March 1, 1996, the circuit court granted the defendant's motion for summary judgment and dismissed the plaintiff's cause of action with prejudice. The plaintiff now appeals the circuit court's order.

## II.

We are asked in this case to consider the appropriateness of summary judgment under *W.Va.R.C.P.* Rule 56 [1978]. As we stated in Syllabus Point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), we review a circuit court's entry of summary judgment *de novo*. The standard for granting summary judgment was established in Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963) where we held:

> A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

*In accord,* Syllabus Point 1, *Fayette Co. National Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997); Syllabus Point 1, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995); Syllabus Point 2, *Painter, supra.*

---

**2.** The pertinent part of our statute of frauds, *W.Va.Code*, 55–1–1 [1990], states:

No action shall be brought in any of the following cases: . . .

(f) Upon any agreement that is not to be performed within a year; . . .

Unless the offer, promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged thereby or his agent. But the consideration need not be set forth or expressed in

the writing; and it may be proved (where a consideration is necessary) by other evidence.

**3.** The Goodyear document indicates that Goodyear agreed with the defendant to sell racing tires to the Ona Speedway (defendant Chapman) for a period of three years at certain prices. These tires would, however, be ordered by and delivered to plaintiff Fry at the racetrack. The Goodyear tire distributor, the plaintiff and the defendant signed the Goodyear document in acknowledgment of this arrangement.

The plaintiff appeals the circuit court's summary judgment order on three grounds. First, the plaintiff asserts that an oral contract exists between the parties regarding the sale of racing tires and fuel, and that questions of material fact remain regarding the terms of the contract. Second, the plaintiff argues that the Goodyear document, signed by the plaintiff and the defendant, constitutes a memorandum of the contract which meets the statute of frauds' requirement that such agreements be in writing, signed by the party to be charged. Third, and alternatively, the plaintiff argues that it had partially performed the contract so that even if the Goodyear document is an insufficient memorandum, the statute of frauds' writing requirement is no longer applicable.

The defendant denies that a contract existed, but argues that even if a contract was formed between the parties, then that contract was for a period in excess of one year.[4] Accordingly, the statute of frauds requires that the "contract, agreement, representation, assurance . . . or some memorandum or note thereof, be in writing and signed by the party to be charged thereby[.]" *See, W.Va. Code*, 55–1–1(f) [1990], *supra*, note 2.

■ We have previously stated that a writing, to be sufficient under a statute of frauds, must in some way refer to the terms of the agreement that is sought to be enforced.

> Every agreement required by the statute of frauds to be in writing must be certain in itself or capable of being made so by reference to something else, whereby the terms can be ascertained with reasonable certainty.

Syllabus Point 2, in part, *White v. Core*, 20 W.Va. 272 (1882). *Accord*, Syllabus Point 5, *Timberlake v. Heflin*, 180 W.Va. 644, 379 S.E.2d 149 (1989); Syllabus, *Harper v. Pauley*, 139 W.Va. 17, 81 S.E.2d 728 (1953). By "certain in itself," we mean that within its four corners the writing must contain or refer to the basic terms of the agreement:

> It is essential for the memorandum relied on to take the contract out of the operation of the statute [of frauds] that it contain every essential element of the agreement, except under our statute it need not state the consideration. In all other respects it must be a valid common law contract, having the element of certainty. Of course, that is certain which may be made certain. . . .

*Milton Bradley Co. v. Moore*, 91 W.Va. 77, 80, 112 S.E. 236, 237 (1922).

■ We have carefully reviewed the Goodyear document, and we conclude that the document does not contain the terms essential to the agreement alleged to exist between the plaintiff and defendant. There is nothing in the Goodyear document or any other writing to suggest that the plaintiff will be the exclusive seller of those tires at the Ona Speedway; that the plaintiff will be allowed to operate a concession at the track for three years; that the plaintiff will be the exclusive seller of racing fuel at the track for three years; nor is there any indication that the alleged agreement can be terminated only for cause. Therefore, the Goodyear document does not serve to take the agreement out of the requirements of the statute of frauds. Accordingly, find that the circuit court could not have reasonably concluded that the Goodyear document was a proper writing under the statute of frauds.

■ The plaintiff further asserts that under the doctrine of partial performance, notwithstanding the statute of frauds, courts will enforce an oral contract which has been partially performed. Forester Fry (the owner of the plaintiff corporation) contended in an affidavit that after he entered into the oral agreement with the defendant, he formed the plaintiff corporation, obtained all necessary licenses, purchased equipment, bought tires and racing fuel, and operated the business at the defendant's racetrack for approximately three months. These acts, he contends, satisfy the partial performance doctrine.

---

4. The plaintiff and defendant dispute the existence of any contract. While this may constitute a question of fact sufficient to avoid summary judgment, we do not reach this question because we conclude that the enforcement of any such contract would be barred by the statute of frauds.

The plaintiff relies upon *Kimmins v. Oldham,* 27 W.Va. 258 (1885) for the proposition that courts will avoid the application of the statute of frauds and will enforce an oral services or sale of goods contract which has been partially performed. We stated in Syllabus Point 2 of *Kimmins* that:

It is well settled, that courts of equity will notwithstanding the statute of frauds enforce oral contracts for the sale of land which have been partially performed; and when the failure to complete the contract would operate as a fraud, *such courts* may exercise a similar jurisdiction with regard to chattels; but courts of law will not enforce such contracts contrary to the provisions of the statute.

The plaintiff points to Syllabus Point 3 of *Kimmins,* where we went on to state:

But it is a general rule, that where one has rendered services, paid a consideration, or sold and delivered goods in execution of an oral contract, which on account of the statute [of frauds] can not be enforced against the other party, such one can in a court of law recover the value of the services or goods upon a *quantum meruit or valebant.*

Here we laid out the general rule for the part performance doctrine. However, we believe that the plaintiff's sole reliance upon Syllabus Point 3 of *Kimmins* is misplaced because in Syllabus Point 4 of *Kimmins* we qualified that general rule, providing that its application

... is limited and confined to cases, in which the services rendered, the goods delivered or consideration paid inured to the benefit of the defendant; and in such cases the recovery is not upon the contract but upon the *quantum meruit or valebant* or upon the money counts.

In the instant case, we believe that the plaintiff cannot recover on a *contract theory* relying on *Kimmins,* but rather is entitled to recovery only on *quantum meruit or quantum valebant.* There is no evidence in the record to suggest that the plaintiff was denied the benefit of its sales of tires and fuel, or that it was not paid for any services rendered. Instead, it appears uncontroverted that the plaintiff received full compensation for the services it performed and the goods it sold.

We therefore conclude that, under our expression in *Kimmins* of the doctrine of part performance, the circuit court could not have reasonably concluded that the plaintiff was entitled to relief from the requirements of the statute of frauds.

Based upon the foregoing, the order of the circuit court granting summary judgment to the defendant is affirmed.

Affirmed.

STARCHER, J. dissents and filed a dissenting opinion.

STARCHER, J., dissenting.

(Filed Dec. 17, 1997)

Gentlemen, start your engines. The majority has dropped the checkered flag in favor of the defendant in a speedy analysis of whether the plaintiff was shoved aside, allowing the defendant to take the lead in operating the plaintiff's business. This case presents a summary result where, had the parties each been allowed to tell his story side-by-side to a jury, the result might have been quite different.

I dissent because the majority's opinion does nothing but race to affirm a summary judgment and thereby permitting a win without any expression of the reasoning applied by the circuit judge, and worse, the opinion swerves, twists and turns to completely avoid years of jurisprudence on the use of the doctrine of partial performance to avoid the statute of frauds.

In the first turn of this case, the majority ignores the rules of the road set forth in *Fayette Co. National Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997) that "an order granting summary judgment cannot merely recite and rest exclusively upon a conclusion that, 'No genuine issue of material fact is in dispute and therefore summary judgment is granted.' " 199 W.Va. at 353, 484 S.E.2d at 236.

So that we can fairly examine a summary judgment order, this Court has to be able to "determine whether the stated reasons for

the granting of summary judgment by the lower court are supported by the record." *Id.* The only way for this to happen is for the circuit court to identify the factual and legal support for its ultimate conclusions. We said in *Fayette County National Bank* that:

Although our standard of review for summary judgment remains de novo, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed.

Syllabus Point 3, *Fayette County National Bank.* We concluded that the "summary judgment findings by the circuit court ... [did] not rise to the level of 'meaningful' findings required by the holding we have made today." 199 W.Va. at 354, 484 S.E.2d at 237.

My reading of the circuit court's order in the instant case leads me to the same conclusion.[1] The circuit court's order granting summary judgment in this case absolutely fails to meet the *Fayette County National Bank* standard. I would have ruled that the circuit court failed to make the necessary meaningful legal and factual findings and then remanded the case for a proper review.

I must say that I tire of the constant squealing about the mandate of *Fayette County National Bank* but this case is a slick example of why circuit court judges need to rip the stickers off their pens, scuff some paper and state their reasons for granting summary judgment in writing. This Court has been left guessing what law and facts served as the frame for, let alone the body of, the circuit court's decision. By failing to state why summary judgment was granted, circuit courts do nothing but fuel additional litigation and appeals, and what is more important, frustration with the legal system by rookie litigants. Instead of remanding the case to the circuit court for a restart in compliance with traditional road rules, the majority has jumped over the wall and made its own fixes to the body of the circuit court's opinion.

The sharp second turn of this case involves a fundamental rule for fair competition. As I said in my dissent in *Nugen v. Simmons,* 200 W.Va. 253, 259, 489 S.E.2d 7, 13 (1997) (Starcher, J. dissenting):

There is one reason this case should have been tried, and that reason is easy to understand; indeed most of us learned it as children. It is the application of the Golden Rule: "Do unto others as you would have others do unto you."

In this case there was clearly a lot of fender rubbing between Mr. Fry and Mr. Chapman over their agreement, and while this may seem to be a fair maneuver to Mr. Chapman, it most likely appeared to Mr. Fry as outright bumping and hitting that should have been black flagged. The record suggests to me that Mr. Chapman did not have written agreements with *any* of the other vendors at his track, which arguably would allow him to push those vendors off his property too and take over their position once he saw they were making a profit. This Court should black flag any business that operates in this way and let a jury decide whether a contract existed, or decide whether partial performance establishes the terms of the agreement.

My thinking is, if the shoe had been on the other foot, and Mr. Fry had on opening day

---

1. The circuit court's March 1, 1996 order states, *in toto:*

On the 22nd day of February, 1996, came the Defendants, Donald A. Chapman d/b/a Ona Speedway and Donald A. Chapman (the "Defendants") by counsel, Daniel A. Earl, and the Plaintiff, Fry Racing Enterprises, Inc., by counsel, James W. St Clair, for a hearing on Defendants' Motion for Summary Judgment. The Court, upon reviewing the Defendants' Motion for Summary Judgment and the Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment and hearing the arguments and representations of counsel for the Plaintiff and the Defendants, was of the opinion that Defendants' Motion for Summary Judgment should be granted, *their being no genuine issue of material fact,* and that Defendants are entitled to judgment as a matter of law.

WHEREFORE IT IS ORDERED, Defendants' Motion for Summary Judgment shall be granted and Plaintiff's cause of action shall be dismissed with prejudice.

To all of which the Plaintiff excepts and objects.

suddenly refused to sell a single set of tires or a splash of gas to drivers at Mr. Chapman's new racetrack, Mr. Chapman would feel that he had a right to a trial to show he lost business and profits under the contract. Basically, a jury should be allowed to decide whether or not Mr. Chapman's conduct was the pits.

If the majority had simply "whoa'd down" a little bit, it would also have discovered in the final turns of this event that the result dictated by the Golden Rule is also supported by settled legal principles—also fairly easy to understand—which strongly suggest that this case should not have been disposed of by a quick drop of the checkered flag called summary judgment.

In West Virginia, this Court has gained mileage in real estate cases by using the doctrine of part performance to nudge aside the statute of frauds. Time and again this Court has slid right on past the statute of frauds and enforced a contract for the sale of land, when one party had partially lived up to their side of the bargain. This Court has even enforced an unwritten contract for a real estate broker so that the broker could be paid his fee.

For instance, in *Everett v. Brown*, 174 W.Va. 35, 321 S.E.2d 685 (1984), we let a real estate agent collect his fee for selling a house when there was no written listing agreement with the owner. In that case we adopted *Restatement of Contracts, Second*, § 139,[2]

thereby allowing the real estate agent to slingshot past the applicable statute of frauds.[3] We stated at Syllabus Point 3 that:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant: (a) the availability and adequacy of other remedies, particularly cancellation and restitution; (b) the definite and substantial character of the action or forbearance in relation to the remedy sought; (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence; (d) the reasonableness of the action or forbearance; (e) the extent to which the action or forbearance was foreseeable by the promisor.

I see nothing which limits the application of *Everett v. Brown* to real estate cases alone. For reasons that escape my tight, pushy thinking, the majority has slipped by the law and refused to address the doctrine of partial performance in terms of other types of ser-

---

**2.** The *Restatement of Contracts, Second*, § 139 states:

§ 139. Enforcement by Virtue of Action in Reliance
(1) a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.
(2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant:
(a) the availability and adequacy of other remedies, particularly cancellation and restitution;
(b) the definite and substantial character of the action or forbearance in relation to the remedy sought;

(c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;
(d) the reasonableness of the action or forbearance;
(e) the extent to which the action or forbearance was foreseeable by the promisor.
*Restatement of Contracts, Second*, § 139 is complimentary to the doctrine of promissory estoppel, *Restatement of Contracts, Second*, § 90, which dispenses with the requirement of consideration.

**3.** In *Everett*, the applicable statute of frauds was W.Va.Code, 47–12–17(c) [1959], which required real estate broker contracts to be in writing and contain certain elements.

vices contracts and the speedy events of our 20th century. The principle espoused in *Everett v. Brown* should be available to a wide-open field, including the participants in this case.

In other venues, the doctrines of part performance, promissory estoppel, and equitable estoppel have all drafted bumper-to-bumper with one another to defeat a defendant's assertion of the statute of fraud. The basic requirements to put each doctrine on the track against the statute of frauds are quite similar. Essentially, for a plaintiff to successfully avoid a statute of frauds, there must be proof that a representation was made by the defendant in connection with the contract; that the defendant has a reason to believe the representation would induce action by the plaintiff; that the representation did induce action by the plaintiff, to the plaintiff's detriment; and that the application of the statute of frauds will result in an unconscionable injury to the plaintiff, or in the unjust enrichment of the defendant.

The purpose and intent of the statute of frauds is, obviously, to prevent fraud; these various theories exist because the statute should not be allowed to operate as a defense where its application has the effect of perpetrating a fraud.

A review of this case offered many opportunities for the majority to throw out a caution flag. So, as I cross the finish line, I want to make clear that the majority's limited opinion was based on a very limited record from the circuit court. In the future, any plaintiff attempting to avoid the statute of frauds through part performance should present argument in detail to the circuit court first. A statute of frauds should not be allowed to be used by a defendant when there is evidence that a fraud is being perpetrated. We should not, as here, allow a defendant to drink milk from the winner's cup or pop corks off champagne bottles, when that defendant has gotten a plaintiff to rely upon a promise that the defendant intended to keep only at his convenience.